[No. F051690. Fifth Dist. Dec. 7, 2007.]

NEIGHBORS IN SUPPORT OF APPROPRIATE LAND USE et al.,
Plaintiffs and Respondents, v.
COUNTY OF TUOLUMNE et al., Defendants and Appellants.

**COUNSEL**

Gregory J. Oliver, County Counsel, A. Paul Griebel, Deputy County Counsel; Diepenbrock Harrison, Andrea A. Matarazzo, Michael E. Vinding and David R. Rice for Defendants and Appellants.

Kenyon Yeates, J. William Yeates, Keith G. Wagner and Jason R. Flanders for Plaintiffs and Respondents.

OPINION

**WISEMAN, J.**—We begin by stating the question presented in this case. That is, can a county approve an application to devote a parcel of real property to a use disallowed by the applicable ordinance even though the county does not rezone the property to a district allowing the use, does not amend the text of the zoning ordinance to allow the use in the existing district, does not issue a conditional use permit consistent with the zoning ordinance, and does not grant a variance? We conclude that it cannot. Tuolumne County's decision in this case to grant a parcel an ad hoc exception allowing a commercial use in an agricultural zoning district—an exception which was unavailable to other parcels in the same district—violated the uniformity requirement of Government Code section 65852.[1] Contrary to the county's contention, it does not help that the exception was contained in a development agreement approved pursuant to the development agreement law (§ 65864 et seq.). We affirm the trial court's judgment directing the county to reverse its action.

## *FACTUAL AND PROCEDURAL HISTORIES*

Ronald and Lynda Peterson owned 37 acres in an unincorporated area of Tuolumne County. On it were a house, another house under construction, two garages, a working seven-acre vineyard, a stream, and several water storage ponds. The area around two of the ponds was landscaped extensively, while the remainder of the property was in a natural state, occupied by grasses and oak trees. The Petersons had plans to expand the vineyard by three acres. Bordering the property to the west were two other 37-acre parcels used as grazing pasture. To the north, south, and east was residential property in lots ranging from two to five acres.

After holding their daughter's wedding on the property, the Petersons decided to open a business hosting weddings and similar events. The zoning designation of the property, however, was exclusive agricultural, 37-acre minimum (AE-37). The purpose of the AE-37 district, as set forth in the zoning ordinance, "is to provide for agricultural and resource production where commercial agricultural uses can exist without encroachment of incompatible uses." (Tuolumne County Ord. Code, § 17.08.010.) Commercial use for weddings and similar events was not allowed by the zoning ordinance, with or without a conditional use permit. (Tuolumne County Ord. Code, §§ 17.08.020, 17.08.030.)

The Petersons submitted an application to the Tuolumne County Community Development Department on January 21, 2003, seeking permission to use the

---

[1] Subsequent statutory references are to the Government Code unless noted otherwise.

property for the new commercial venture. Many neighboring residential owners submitted letters and a petition urging denial of the application. The two agricultural neighbors submitted no comments and one expressed support for the application when contacted by telephone by county staff. The neighbors' opposition was aroused by the Petersons' daughter's wedding, which had resulted in noise and cars parked along the road. For these and other reasons, county staff and the county's planning commission recommended denial of the application. At a meeting of the board of supervisors on September 16, 2003, the Petersons withdrew their application before the board took action on it.

The Petersons submitted a revised application on October 21, 2003. It included many modifications that had been proposed by the planning commission. The revised application also sought to address the problem—previously unresolved—presented by the fact that the property was not zoned for the contemplated use, even with a conditional use permit. It did this by relying on proposed amendments to the zoning ordinance then pending before the board of supervisors. These amendments would have added, as conditional uses in the AE-37 and AE-37:AP zoning districts, "lawn parties, weddings, or similar outdoor activities . . . ." The revised application sought a conditional use permit based on the proposed amendments.[2]

The board of supervisors declined to adopt the proposed amendments.[3] In a comment letter sent to the community development department as part of the public notice-and-review process, counsel for Neighbors in Support of Appropriate Land Use asserted that "[t]he County does not have the legal authority to actually approve the project . . . because the County's zoning ordinance does not allow the use proposed . . . ." Responding to this comment, city staff acknowledged that, because of the county's failure to adopt the zoning ordinance amendments, "commercial events are not a permitted or conditional use in the AE-37 or :AP zoning districts." Despite this, staff opined that

---

[2] The revised application also requested that the property be rezoned from AE-37 to AE-37:AP. This rezoning was approved by the board of supervisors. The parties agree that this rezoning has no effect on the issues in this appeal and was not challenged in the lower court proceeding. The commercial use at issue was not allowed, with or without a conditional use permit, in either the AE-37 or the AE-37:AP zoning district. (Tuolumne County Ord. Code, §§ 17.08.020, 17.08.030, 17.51.027, 17.51.040.) The board of supervisors declined to amend the zoning ordinance to alter the uses allowed in either district.

The AE-37:AP designation stands for exclusive agricultural, 37-acre minimum, agricultural preserve combining. "The purpose of the agricultural preserve (:AP) combining district is to implement the provisions of the California Land Conservation Act of 1965, also known as the Williamson Act. . . ." (Tuolumne County Ord. Code, § 17.51.010.) The rezoning was related to a modification of the contract governing the parcel under the Williamson Act. (§ 51200 et seq.)

[3] The board of supervisors *did* amend its Williamson Act regulations to allow "[c]ommercial events, such as lawn parties, weddings, or similar outdoor activities . . . ." These regulations pertain to the eligibility of property for land conservation contracts under the Williamson Act. No party claims the Williamson Act regulations are relevant to the issues in this appeal.

the county could still approve the Petersons' application by creating a special exception to the zoning ordinance, to be contained within a development agreement adopted under the development agreement law. (§ 65864 et seq.) A conditional use permit, although not relevant for zoning purposes given the county's failure to adopt the zoning amendments, would still be necessary to make the property eligible for a new contract under the Williamson Act. (§ 51200 et seq.) Consequently, according to staff, "[t]he only alteration of the project [resulting from the failure to adopt the zoning amendments] is that the necessary entitlements have changed from a Use Permit to a Development Agreement and Use Permit."

The board of supervisors proceeded in accordance with the staff recommendations. On July 5, 2005, it passed Ordinance No. 2636, authorizing adoption of a development agreement. The development agreement purported to grant the Petersons "[a]n exception to Chapters 17.08 and 17.51 of the Tuolumne County Ordinance Code . . . to allow commercial events, including weddings, retirement or birthday parties, service club functions, and similar activities as conditional uses in the AE-37 . . . and :AP . . . districts on the real property." The agreement acknowledged that its purpose was to stand in for amendments to the zoning ordinance that would allow the uses in question: It stated that it would terminate when "commercial events such as lawn parties, weddings or similar activities are made conditional uses in the AE-37 and :AP zoning districts" by action of the board of supervisors. At the same time, the board issued conditional use permit 03CUP-46, purporting to allow the Petersons to engage in these uses on the property. To address the requirements of the California Environmental Quality Act (Pub. Resources Code, § 21000 et seq.) (CEQA), the board approved a mitigated negative declaration stating that, with mitigation measures, the project would not have a significant effect on the environment.

Neighbors in Support of Appropriate Land Use and two of its members, Steve Bickford and Fred Stieler (collectively, Neighbors), filed a petition for a writ of mandate, naming the County of Tuolumne and its board of supervisors (collectively, the county) as respondents and seeking reversal of the county's action. The petition argued that the county lacked authority to approve the Petersons' application because the commercial uses at issue violated the zoning ordinance even with a conditional use permit. It also argued that the county failed to fulfill its responsibilities under CEQA.

Neighbors moved for judgment and the court granted the motion. The court agreed with the first allegation in Neighbors' petition, ruling that the county's action "violates the Planning and Zoning Law [(§ 65000 et seq.)], because it authorizes a use on [the Petersons'] land that is not allowed under the County's AE-37 or [:AP] zoning ordinances." For this reason, "Ordinance

No. 2636, the Development Agreement, and the Conditional Use Permit the Development Agreement purports to approve, are *ultra vires* acts of the Board of Supervisors and are void *ab initio*," the court concluded. It then dismissed Neighbors' CEQA claim "as unripe for judicial review." The court entered judgment on its order on October 2, 2006, and the county's appeal followed.

## *DISCUSSION*

*Standard of review*

The county actions the trial court invalidated were the approval of a development agreement and the issuance of a conditional use permit. The approval of a development agreement is a legislative act (§ 65867.5) which the trial court reviews under *ordinary* or *traditional* mandamus procedures pursuant to Code of Civil Procedure section 1085. (*Santa Margarita Area Residents Together v. San Luis Obispo County Bd. of Supervisors* (2000) 84 Cal.App.4th 221, 227–228 [100 Cal.Rptr.2d 740].) The trial court's inquiry in a traditional mandamus proceeding is limited to whether the local agency's action was arbitrary, capricious, or entirely without evidentiary support, and whether it failed to conform to procedures required by law. (*Pitts v. Perluss* (1962) 58 Cal.2d 824, 833 [27 Cal.Rptr. 19, 377 P.2d 83]; *Wal-Mart Stores, Inc. v. City of Turlock* (2006) 138 Cal.App.4th 273, 300 [41 Cal.Rptr.3d 420], disapproved on other grounds by *Hernandez v. City of Hanford* (2007) 41 Cal.4th 279 [59 Cal.Rptr.3d 442, 159 P.3d 33].) The trial court may not substitute its judgment for that of a public agency or force the agency to exercise its discretion in a particular manner, but may correct abuses of discretion. (*Wal-Mart Stores, Inc. v. City of Turlock, supra*, 138 Cal.App.4th at p. 300.)

Further, "[a]lthough the traditional formulation articulated in the mandate cases [citations] does not specifically include 'unlawful or contrary to established public policy,' it cannot be doubted the mandate cases would authorize judicial intervention" where the challenged action was "shown to be unlawful or indisputably contrary to established public policy." (*Lewin v. St. Joseph Hospital of Orange* (1978) 82 Cal.App.3d 368, 386 [146 Cal.Rptr. 892].) The reviewing court exercises "independent judgment" in determining whether the agency action was "consistent with applicable law." (*Associated Builders & Contractors, Inc. v. San Francisco Airports Com.* (1999) 21 Cal.4th 352, 361 [87 Cal.Rptr.2d 654, 981 P.2d 499].) The trial court and appellate court apply the same standard; the trial court's determination is not binding on us. (*Personnel Com. v. Board of Education* (1990) 223 Cal.App.3d 1463, 1466 [273 Cal.Rptr. 288].)

To the extent that the zoning exception set forth in the development agreement may be viewed as similar to rezoning legislation, it is also a

legislative act reviewable under ordinary mandamus procedures. (*Arnel Development Co. v. City of Costa Mesa* (1980) 28 Cal.3d 511, 521–523 [169 Cal.Rptr. 904, 620 P.2d 565] [zoning and rezoning, even of small parcels, are legislative acts reviewable under traditional mandamus procedures].)

The issuance of a conditional use permit is a quasi-judicial administrative action, which the trial court reviews under *administrative* mandamus procedures pursuant to Code of Civil Procedure section 1094.5. (*Neighborhood Action Group v. County of Calaveras* (1984) 156 Cal.App.3d 1176, 1180, 1186 [203 Cal.Rptr. 401].) Except in a limited class of cases involving fundamental vested rights (*Bixby v. Pierno* (1971) 4 Cal.3d 130, 143–144 [93 Cal.Rptr. 234, 481 P.2d 242]), the trial court reviews the whole administrative record to determine whether the agency's findings are supported by substantial evidence and whether the agency committed any errors of law. (*Concord Communities v. City of Concord* (2001) 91 Cal.App.4th 1407, 1413 [111 Cal.Rptr.2d 511]; *Ryan v. California Interscholastic Federation-San Diego Section* (2001) 94 Cal.App.4th 1048, 1077 [114 Cal.Rptr.2d 798].) Again, on appeal, our function is identical to that of the trial court. (*Ryan v. California Interscholastic Federation-San Diego Section, supra*, at p. 1077.)

As the parties agree, the facts are undisputed, and the wisdom or arbitrariness of the county's action is not in issue. Instead, the issues presented are pure questions of law. The bottom line here, under both traditional and administrative mandamus procedures, is that we must exercise our independent judgment to answer questions of law. (*California Assn. of Psychology Providers v. Rank* (1990) 51 Cal.3d 1, 11 [270 Cal.Rptr. 796, 793 P.2d 2]; *Stermer v. Board of Dental Examiners* (2002) 95 Cal.App.4th 128, 132–133 [115 Cal.Rptr.2d 294].)

*Analysis*

■ The zoning authority of local governments derives not from statutes but from article XI, section 7, of the California Constitution, which establishes the police power of counties and cities.[4] (*Taschner v. City Council* (1973) 31 Cal.App.3d 48, 62 [107 Cal.Rptr. 214], overruled on other grounds by *Associated Home Builders etc., Inc. v. City of Livermore* (1976) 18 Cal.3d 582 [135 Cal.Rptr. 41, 557 P.2d 473]; *Scrutton v. County of Sacramento* (1969) 275 Cal.App.2d 412, 417 [79 Cal.Rptr. 872] (*Scrutton*) [citing police power provision formerly contained in art. XI, § 11]; see also 1 Longtin, Cal. Land Use (2d ed. 1987) § 1.22[1], p. 48.) "Under the police power granted by the Constitution, counties and cities have plenary authority to

---

[4] "A county or city may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general laws." (Cal. Const., art. XI, § 7.)

govern, subject only to the limitation that they exercise this power within their territorial limits and subordinate to state law. (Cal. Const., art. XI, § 7.) Apart from this limitation, the 'police power [of a county or city] under this provision . . . is as broad as the police power exercisable by the Legislature itself.' [Citation.]" (*Candid Enterprises, Inc. v. Grossmont Union High School Dist.* (1985) 39 Cal.3d 878, 885 [218 Cal.Rptr. 303, 705 P.2d 876].) The Planning and Zoning Law (§ 65000 et seq.) states that its provisions regulating zoning (which apply to counties and general law cities, but not to charter cities [§ 65803]) are meant to be minimally restrictive of local authority. "[T]he Legislature declares that in enacting this chapter it is its intention to provide only a minimum of limitation in order that counties and cities may exercise the maximum degree of control over local zoning matters." (§ 65800.)

■ Property owners seeking relief from a zoning restriction typically take one of three courses of action contemplated by the zoning statutes. First, they can obtain a change in the zoning ordinance that imposes the restriction on their property. This form of relief is implicit in the statutes describing the kinds of zoning restrictions local governments can impose in the first place. A property owner can ask a local legislature to rezone the property, placing it in a different zoning district that allows the activity the owner wishes to engage in. (See § 65851 [stating that local legislature may divide city or county into zoning districts].) This type of legislative relief normally involves a change in the zoning map, showing that the property is in a different zone than before. (1 Longtin, Cal. Land Use, *supra*, § 3.50, p. 322.) Alternatively, the owner can ask the local legislature to make a change in the uses permitted or regulations imposed in the property's current zone. (See § 65850 [stating that local legislature may regulate uses of land and buildings].) This type of relief involves a change not in the zoning map but in the text of the zoning ordinance. (1 Longtin, *supra*, § 3.50, p. 322.) The Planning and Zoning Law sets forth specific procedures for adopting and amending zoning ordinances which change a property from one zone to another or impose or remove any regulation on property within a zone. (§ 65853.)

■ Second, an owner can apply to the local administrative zoning authority for a conditional use permit. In a county or a general law city, a conditional use permit grants an owner permission to devote a parcel to a use that the applicable zoning ordinance allows not as a matter of right but only upon issuance of the permit. The use must satisfy criteria set forth in the zoning ordinance; criteria vary among different municipalities' ordinances and range from general standards to specific lists of enumerated conditional uses. The Tuolumne County ordinance at issue in this case employed a list of enumerated conditional uses. (Tuolumne County Ord. Code, §§ 17.08.030, 17.51.040.) Administrative procedures for hearing and deciding applications for conditional use permits are set forth in section 65900 and following. (See

*IT Corp. v. Solano County Bd. of Supervisors* (1991) 1 Cal.4th 81, 89 [2 Cal.Rptr.2d 513, 820 P.2d 1023] ["A zoning ordinance may allow conditional uses, pursuant to permit, for particular parcels within a zone"]; 4 Manaster & Selmi, Cal. Environmental Law and Land Use Practice (2007) Zoning, § 60.31[1], pp. 60-37 to 60-38 (rel. 46-4/07).)

■ Third, an owner can apply to the local administrative zoning authority for a variance. In a county or a general law city, a variance is a permit to build a structure or engage in an activity that would not otherwise be allowed under the zoning ordinance; it cannot, however, be granted to allow a *use* unauthorized by the zoning ordinance. (§ 65906.) Typically, variances provide relief from regulations such as those governing setbacks, height, square footage, and density. (4 Manaster & Selmi, Cal. Environmental Law and Land Use Practice, *supra*, Zoning, § 60.32[1], p. 60-42; 1 Longtin, Cal. Land Use, *supra*, § 3.70[1], pp. 349–350.) A variance may be granted "only when, because of special circumstances applicable to the property, including size, shape, topography, location or surroundings, the strict application of the zoning ordinance deprives such property of privileges enjoyed by other property in the vicinity and under identical zoning classification." (§ 65906.) "The essential requirement of a variance is a showing that a strict enforcement of the zoning limitation would cause unnecessary hardship . . . ." (*PMI Mortgage Ins. Co. v. City of Pacific Grove* (1981) 128 Cal.App.3d 724, 731 [179 Cal.Rptr. 185].)

■ The dispute in this case arose because the challenged action fell into none of these three categories. The county did not amend its zoning ordinance, either to rezone the property or to change the uses allowed in the parcel's zone. In fact, the county considered changing the uses allowed with a conditional use permit, but decided not to do so. Although a conditional use permit issued, it is undisputed that the county's action did not constitute an approval of a conditional use in conformance with the zoning ordinance, because the zoning ordinance did not allow the use at issue as a conditional use. The ordinance allowed only specific, enumerated conditional uses, and the use of which the Petersons sought approval was not one of them. The county's Williamson Act regulations listed weddings and similar commercial activities as conditional uses, and the permit the county issued apparently was intended to support the continuation of the parcel's eligibility for a Williamson Act contract. That, however, has nothing to do with approving a conditional use consistent with the zoning ordinance. Finally, the county's action was not the granting of a variance. The essence of the Petersons' application was a request to devote the property to a use prohibited by the zoning ordinance. A variance cannot grant permission to engage in an unauthorized use.

The fact that the action was none of these things does not, in itself, show that the action was invalid. As we have said, cities' and counties' zoning authority derives from the state Constitution, so zoning actions not authorized by statute are not necessarily invalid for that reason. The question, rather, is whether the county's action violated the "minimum of limitation" (§ 65800) that state law places on local authorities' control over zoning.

This is where the uniformity requirement comes in. Section 65852 provides: "All such [zoning] regulations shall be uniform for each class or kind of building or use of land throughout each zone, but the regulation in one type of zone may differ from those in other types of zones." Does this provision prohibit a county from granting a parcel's owner the right to engage in a use prohibited to all other parcels in the same zone, even though it does not rezone the property, amend the ordinance to permit the use, grant a valid conditional use permit, or grant a variance?

■ This is a question of statutory interpretation. In interpreting a statute, our objective is "to ascertain and effectuate legislative intent." (*People v. Woodhead* (1987) 43 Cal.3d 1002, 1007 [239 Cal.Rptr. 656, 741 P.2d 154].) "In the end, we ' "must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences." [Citation.]' " (*Torres v. Parkhouse Tire Service, Inc.* (2001) 26 Cal.4th 995, 1003 [11 Cal.Rptr.2d 564, 30 P.3d 57].)

■ Section 65852 is the third step in a three-step logical sequence that has been in place since 1953. (See Stats. 1953, ch. 1355, § 3, pp. 2926, 2928 [former §§ 65800–65802]; Stats. 1965, ch. 1880, § 6, pp. 4345, 4347 [original versions of §§ 65850–65852].) Section 65850 sets forth types of zoning regulations cities and counties may impose, including restrictions on the uses of buildings and land. Section 65851 states that, for purposes of zoning regulations, cities and counties may divide land into zones. Section 65852 provides that the regulations contemplated by section 65850 must be uniform within each of the zones contemplated by section 65851, but may differ from zone to zone.[5]

■ The general meaning of this sequence is not difficult to understand: Cities and counties may create rules and they may create zones; the rules should be the same for each parcel within a zone but may be different for parcels in different zones. Our Supreme Court aptly has explained the

---

[5] Earlier versions of the uniformity requirement were enacted in 1917 (Stats. 1917, ch. 734, § 3, p. 1420), 1949 (Stats. 1949, ch. 79, § 1, pp. 100, 185), and 1951 (Stats. 1951, ch. 1690, § 6, p. 3896).

fundamental reason for having a scheme of this nature. It did so in the context of a dispute over a variance, but the same principle applies here: ■ "A zoning scheme, after all, is similar in some respects to a contract; each party foregoes rights to use its land as it wishes in return for the assurance that the use of neighboring property will be similarly restricted, the rationale being that such mutual restriction can enhance total community welfare. [Citations.] If the interest of these parties in preventing unjustified variance awards for neighboring land is not sufficiently protected, the consequence will be subversion of the critical reciprocity upon which zoning regulation rests." (*Topanga Assn. for a Scenic Community v. County of Los Angeles* (1974) 11 Cal.3d 506, 517–518 [113 Cal.Rptr. 836, 522 P.2d 12].)

If a zoning scheme is like a contract, the uniformity requirement is like an enforcement clause, allowing parties to the contract to challenge burdens unfairly imposed on them or benefits unfairly conferred on others. According to a leading treatise, section 65852 "is intended to prevent unreasonable discrimination against or benefit to particular properties within a given zone." (4 Manaster & Selmi, Cal. Environmental Law and Land Use Practice, *supra*, Zoning, § 60.70, p. 60-114.3 (rel. 45-9/06).)

By creating an ad hoc exception to benefit one parcel in this case—an exception that was not a rezoning or other amendment of the ordinance, not a conditional use permit in conformance with the ordinance, and not a proper variance—the county allowed this "contract" to be broken. If the county had, for instance, rezoned the property, it would be declaring that the Petersons' property appropriately *belonged* in a different zone and was subject to all the rules and limitations applicable to the other parcels in the new zone. Others similarly situated could argue, at future rezonings, that their parcels also belong in a different zone. If the county had altered the zoning ordinance to allow commercial uses like the ones here at issue as conditional uses within the agricultural zone, it would necessarily have given other owners in the zone the opportunity to apply for conditional use permits allowing those uses. Instead, the county simply let one parcel and owner off the hook. In light of the key role played by the requirement of uniformity in a zoning scheme, the parcel's neighbors had a right to expect that this would not happen.

Local zoning power is broad since it issues directly from the broad police power detailed in the California Constitution and not from the narrower provisions of the Planning and Zoning Law. The foundations of zoning would be undermined, however, if local governments could grant favored treatment to some owners on a purely ad hoc basis. Cities and counties unquestionably have the power to rezone and their decisions to do so are entitled to great deference; but rezoning, even of the smallest parcels, still necessarily respects the principle of uniformity. This is because a rezoning places a parcel within

a general category of parcels (those in the new zone), all of which are subject to the same zoning regulations. The county's action in this case, by contrast, placed the Petersons' land in a class by itself.

We recognize that no previous case has invalidated an ordinance on the ground that it conflicted with section 65852. (4 Manaster & Selmi, Cal. Environmental Law and Land Use Practice, *supra*, Zoning, § 60.70, p. 60-114.3 (rel. 45-9/06); 1 Longtin, Cal. Land Use, *supra*, § 1.32[2], p. 63.) Unfortunately, those cases upholding zoning ordinances over uniformity challenges that come closest to being on point are distinguishable. For example, in *Scrutton, supra*, 275 Cal.App.2d 412, an owner wanted to build an apartment building and applied to the county to have her property rezoned from agricultural to multiple-family residential. The county responded with a proposed contract under which it would grant the rezoning if the owner would agree to certain conditions, including a requirement that she pave a bordering street at her own expense. The owner rejected that condition and filed an action for declaratory relief, claiming, among other things, that a provision of the county zoning ordinance (§ 23(H)) allowing imposition of conditions on rezonings was invalid. The trial court granted the county's motion for summary judgment. (*Scrutton, supra*, at pp. 414–416.) In reviewing the summary judgment, the Court of Appeal rejected the view that forcing the applicant to satisfy the conditions before obtaining a rezoning violated the uniformity requirement of section 65852 because it placed a burden on the applicant and parcel to which other owners and parcels in the proposed new zone were not subject. (*Scrutton, supra*, at pp. 416–417.) The court stated: "Government Code section 65852 . . . aims at the general objective of uniform land use within each land zone. Conceivably, a condition evolved under section 23(H) of the county ordinance might illegally broaden or narrow permissible land uses in violation of the state law's uniformity standard. [Citation.] Alternatively, section 23(H) may be utilized to impose conditions in no way affecting the property's availability for uses identical with those of other property in the same zoning classification. Conditional zoning which does not affect the property's use does not violate the uniformity objective. The latter alternative characterizes the present case. The conditions imposed by the county would not prevent Mrs. Scrutton from using her property for all purposes within the multiple residential classification. We conclude that section 23(H) is a valid expression of Sacramento County's zoning power." (*Scrutton, supra*, 275 Cal.App.2d at pp. 418–419.)

*Scrutton* is not on point. Unlike in this case, the issue there was the county's power to enact or refuse to enact *rezoning* legislation. The county here did not rezone or refuse to rezone the property; it made an ad hoc exception to the regulations for the parcel's existing zone. Further, the holding in *Scrutton* turned on the fact that the conditions the county imposed—the alleged disuniformity—did not affect the land uses permitted in

the proposed new zone. The Court of Appeal suggested that if the conditions had done this, the result might have been different. In this case, by contrast, an exception to the use limitations in the parcel's existing zone *is* the issue.

In *J-Marion Co. v. County of Sacramento* (1977) 76 Cal.App.3d 517 [42 Cal.Rptr. 723] (*J-Marion*), the property owners' predecessor in interest entered into a contract with the county where the county agreed to rezone the property from agricultural to commercial and the owner agreed not to sell alcohol on the property. (*Id.* at p. 519.) The new owners sued the county seeking to remove the alcohol restriction. They claimed that the restriction violated the uniformity requirement of section 65852 because other parcels in the commercial zone did not have the same restriction. The trial court rejected the claim and ruled for the county. (*J-Marion, supra,* at p. 520.) The Court of Appeal observed that, unlike the owner in *Scrutton,* these owners were challenging a restriction on the permissible uses of their property. (*J-Marion, supra,* 76 Cal.App.3d at pp. 521–522.) The court affirmed in spite of this, emphasizing the fact that the restriction had been imposed with the predecessor-in-interest's consent. It stated: "The uniformity requirements specified in section 65852 relate to 'All such regulations' adopted under the authority of section 65800. The term all such regulations is a reference to legislative enactments, such as ordinances, and does not refer to or apply to consensual agreements. Accordingly, we determined that use limitations imposed upon land by consensual agreement are not violative of the uniformity provisions of section 65852; only use conditions unilaterally imposed by the legislative body as a condition and not consented to or acquiesced in by the owner or possessor come within the ambit of section 65852. We are not confronted with a situation in which use discrimination in the form of conditional zoning has been summarily imposed on one landowner. Such a unilateral use condition would obviously be violative of section 65852." (*J-Marion, supra,* 76 Cal.App.3d at p. 523.)

*J-Marion* is not controlling here. The development agreement between the Petersons and the county was a legislative enactment, not *merely* a consensual agreement, so the *J-Marion* court's stated rationale for declining to apply section 65852 does not apply. Further, the *J-Marion* court was confronted only with "use limitations *imposed upon* land by consensual agreement" (*J-Marion, supra,* 76 Cal.App.3d at p. 523, italics added), not with use limitations *lifted from* land by agreement between the owner and the county without either amending the zoning ordinance or complying with it. In light of this, we conclude *J-Marion*'s statement that the uniformity requirement applies "only [to] use conditions unilaterally imposed by the legislative body" (*ibid.*) is dictum. Nothing in the facts or disposition of *J-Marion* requires the conclusion that section 65852 cannot also apply to use limitations removed, as here, through the legislative body's agreement with the owner. The *J-Marion* court considered only the imposition of nonuniform burdens by

consent, not the conferral of nonuniform benefits. Consequently, despite the opinion's seemingly general language, we believe the better course is to treat *J-Marion* as not dealing with the situation presented here.

Most importantly, the basic underlying idea of the *J-Marion* holding—that the owner agreed to the limitation and its successor cannot be heard to complain about it—has no application here. These complaining parties—the Neighbors—never agreed to a use violative of the use limitations in the zone. To enforce an owner's bargained-for promise to submit to a restriction—even a restriction imposed on no other parcel in the zone—does not violate the uniformity requirement because it does not break the "contract" the Supreme Court described in *Topanga Assn. for a Scenic Community v. County of Los Angeles, supra,* 11 Cal.3d at page 517. There is no "subversion of the critical reciprocity upon which zoning regulation rests." (*Id.* at p. 518.) This reciprocity *is* undermined, however, where a parcel receives ad hoc privileges in derogation of its neighbors' reasonable expectation that the permitted uses will be governed by the applicable zoning ordinance unless and until it is amended.

The county contends that the Development Agreement Law (§ 65864 et seq.) is authority for its action. In effect, it argues (1) that a development agreement is a fourth statutory option for those seeking relief from zoning restrictions, and (2) that this statute exempts zoning actions undertaken pursuant to it from the uniformity requirement. The county notes that it has enacted a resolution requiring development agreements to be approved via the same procedures as are used for changes in zoning classification, so there can be no procedural objection to the use of a development agreement to make a zoning change. (Tuolumne County Res. No. 13-04.)

██ Whether the Development Agreement Law authorizes an ad hoc zoning exception like the one at issue here is, again, a question of statutory interpretation. The law begins with a set of findings and declarations. It states that the "lack of certainty in the approval of development projects" can be wasteful and costly; assurance that the developer "may proceed with the project in accordance with existing policies, rules and regulations" can ameliorate this result. (§ 65864, subds. (a), (b).) To provide this assurance, cities and counties may enter into development agreements with developers. (§ 65865.) The contents of the agreement are to include, among other things, "the duration of the agreement, the permitted uses of the property, the density or intensity of use, the maximum height and size of proposed buildings, and provisions for reservation or dedication of land for public purposes." (§ 65865.2.) Further, "[u]nless otherwise provided by the development agreement, rules, regulations, and official policies governing permitted uses of the land, governing density, and governing design, improvement, and construction standards and specifications, applicable to development of the property

subject to a development agreement, shall be those rules, regulations, and official policies in force at the time of execution of the agreement." (§ 65866.) A development agreement is a legislative act that must be approved by ordinance, and it "shall not be approved unless the legislative body finds that the provisions of the agreement are consistent with the general plan and any applicable specific plan." (§ 65867.5.)

It is often said that the main purpose of a development agreement is to freeze existing regulations in order to give the developer assurance that the project will not be blocked by future regulatory changes. A leading treatise states: "[O]nce a developer and a city or county enter into a development agreement, zoning and other land use regulations pertaining to development of the property are in essence frozen as of the effective date of the development agreement. For example, the later adoption of an amendment to the general plan, specific plan, or other zoning ordinances which would have the effect of precluding the developer from completing the development project in accordance with the development plan contemplated by the development agreement would not be effective and could not be applied to subsequent approvals or permits required for the development project. To illustrate, if the development plan set forth in the development agreement provides for development at a density of 10 residential dwelling units per acre, but the local jurisdiction later amends its general plan and zoning ordinances pertaining to the property so as to allow only five residential dwelling units per acre, the new zoning classifications would not be effective with regard to the property." (5 Manaster & Selmi, Cal. Environmental Law and Land Use Practice, *supra*, Development Agreements, § 74.30, p. 74-23 (rel. 23-10/97).)

The county, however, contends that the development agreement law allows it to give a developer more than this assurance—specifically, that the law allows the county to grant a developer the right to *avoid* use limitations set forth in *existing* zoning regulations even while leaving those regulations unchanged for all other property owners and refraining from rezoning the property. The county relies on implications it finds in three provisions of the development agreement law: (1) Section 65865.2 states that a development agreement shall specify "the permitted uses of the property," among other things. The county claims this implies that the uses specified can go beyond those allowed by the zoning ordinance. (2) Section 65866 states that the rules governing the permitted uses of land shall be those in effect when the development agreement is executed, "[u]nless otherwise provided by the development agreement . . . ." The county asserts that this implies a power to provide for exceptions to those rules in the agreement, permitting land uses the rules forbid. (3) Section 65867.5 states that a development agreement is valid only if consistent with the applicable general and specific plans. The

county contends that, by requiring this while saying nothing about consistency with zoning ordinances, the law implies that a development agreement can be valid even though it is inconsistent with the applicable zoning ordinance.[6]

We need not attempt any general explication of these provisions. It will suffice to hold that, whatever other effects they may have, they do not create exceptions to the uniformity requirement of section 65852. It is true that a statute stating a more specific proposition takes precedence over one stating a more general, contrary proposition. (Code Civ. Proc., § 1859; *Collection Bureau of San Jose v. Rumsey* (2000) 24 Cal.4th 301, 310 [99 Cal.Rptr.2d 792, 6 P.3d 713].) Sections 65865.2, 65866, and 65867.5 may be more specific than section 65852. We do not think, however, that a *mere arguable implication* of permissiveness in a specific statute takes precedence over an *express command* in a general one. The development agreement law does not authorize cities and counties to create forms of zoning disuniformity they otherwise lack authority to create. If the Legislature had meant to create an exception to the uniformity requirement in the development agreement law, it could have said so expressly.

It is important to state what our holding in this case does *not* mean. It would not conflict with a development agreement imposing additional use limitations on a developer as part of a bargained exchange for a rezoning, similar to the contract in *J-Marion,* for instance. It also would not conflict with a development agreement like the proposed contract in *Scrutton,* in which the county asked for performance of an action as a condition of a rezoning. The present case involves an ad hoc exception to use restrictions in the existing zoning, not a rezoning granted with conditions (often called " 'conditional zoning' " [*Scrutton, supra,* 275 Cal.App.2d at p. 417]) or, for that matter, any other sort of rezoning.

---

[6] The county actually claims that these provisions not only imply that it may do what it did, but that this is their plain meaning. Nothing in these provisions expressly authorizes the granting of ad hoc permission to devote land to uses forbidden by the applicable (and unamended) zoning ordinance. The county's own words ricochet: It says a court may not "rewrite a statute to make express an intention that did not find itself expressed in language of that provision."

The county also relies to a significant degree on a publication of the Institute for Local Self-Government (an arm of the League of California Cities) called Development Agreement Manual. The manual is available at <http://www.cacities.org/resource_files/ 20590.FinalDevAgreement4-5-02.pdf> (as of Dec. 7, 2007). In several places, the authors of this publication express the assumption that a development agreement can validly allow uses prohibited by the applicable zoning ordinance even though the ordinance is not amended. (Development Agreement Manual, *supra,* at pp. 9, 11, 13, 55.) Although drafted by lawyers, this publication is intended as a practical manual for developers and public agencies; it does not contain any legal arguments. Consequently, we do not regard it even as secondary or persuasive authority. In any event, the publication says nothing about the uniformity requirement contained in section 65852.

Further, what we have said does not in any way render meaningless the statutory provisions the county relies on. It is easy to imagine circumstances in which a development agreement validly sets forth permitted land uses that are not identical with those in the current, applicable zoning ordinance. For example, an agreement could set forth uses more restricted than in the zoning ordinance, perhaps as part of a bargained exchange for something given or conceded by the local government. Alternatively, the agreement could set out uses beyond those allowed under the preexisting zoning ordinance if the agreement included or was accompanied by a rezoning or other amendment to the zoning ordinance. One treatise asserts that the purpose of including matters such as the "permitted uses of the property" (§ 65865.2) in a development agreement is simply "to provide some specificity and parameters for development of the property . . . ." (5 Manaster & Selmi, Cal. Environmental Law and Land Use Practice, *supra*, Development Agreements, § 74.32[3], p. 74-27 (rel. 35-11/01).)

Finally, the county cites *Trancas Property Owners Assn. v. City of Malibu* (2006) 138 Cal.App.4th 172 [41 Cal.Rptr.3d 200]. There, the Court of Appeal held that an agreement between a city and a developer that included an exemption from density limitations in the existing zoning ordinance was illegal for multiple reasons. Among these was that the zoning exemption "functionally resemble[d] a variance," and the city did not use the procedures required for a variance when it entered into the agreement. (*Id.* at pp. 175, 178, 181–182.) The court pointed out that "there exist procedures by which a landowner-developer and a city or county may lawfully agree to permit a described development project, including fixing the zoning governing it," and cited the development agreement law. (*Id.* at p. 182.) The county argues that this comment implies that the *Trancas* court believed the city and developer in that case could have entered into the same agreement if they had followed the requirements of the development agreement law.

■ *Trancas* does not impact our decision. First, the comment in *Trancas* upon which the county relies is dictum. No contract executed pursuant to the development agreement law was before the *Trancas* court. Second, the court did not mention the uniformity requirement of section 65852. A case is not authority on an issue not presented in it. (*City and County of San Francisco v. Sainez* (2000) 77 Cal.App.4th 1302, 1318 [92 Cal.Rptr.2d 418].)

■ The ad hoc exception granted in this case violated section 65852. As a result, we do not address Neighbors' other arguments.

## *DISPOSITION*

The judgment is affirmed. Respondents shall recover their costs on appeal.

Harris, Acting P. J., and Gomes, J., concurred.