Filed 10/15/13  Hancocks v. County of  Alameda CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| RICHARD HANCOCKS,<br><br>　　　　Plaintiff and Appellant,<br><br>v.<br><br>COUNTY OF ALAMEDA et al.,<br><br>　　　　Defendants and Respondents. | A136245<br><br>(Alameda County<br>Super. Ct. No. HG11595245) |

　　　　This appeal represents the culmination of attempts by appellant Richard Hancocks to prevent the operation of a charitable food distribution program from a site in an unincorporated area of Alameda County.  Having failed in administrative proceedings to halt the Alameda County Board of Supervisors' approval of a conditional use permit allowing resumption of the program following the destruction of the warehouse, Hancocks was denied a writ of administrative mandamus to overturn that decision.  We conclude that denial was proper, and we affirm.

## BACKGROUND

　　　　The trial court's detailed order denying Hancocks's petition includes an excellent summary of the history of this dispute which, with minor nonsubstantive editorial changes, we adopt as our own:

　　　　"This Petition for Writ of Mandate seeks review of a final administrative decision of the County of Alameda approving a conditional use permit for respondent Hope 4 the Heart.  Hope 4 the Heart, a nonprofit corporation, has operated a food storage and distribution facility for needy families out of a warehouse located at 22035 Meekland

1

Avenue in an unincorporated area of Alameda County known as Cherryland (the 'Meekland property'). Hope 4 the Heart funds its food distribution activities through a combination of grants, including Alameda County Community Development Block Grants, private foundations and donations from private individuals. (AR 83.) At the time Hope 4 the Heart commenced operations, the land use designation of the Meekland property was Manufacturing (Industrial). From 2000 through 2008, Hope 4 the Heart distributed food from the warehouse located on the Meekland property and conducted its administrative operation from a small metal building, also located on the site.

"In early 2008, a fire destroyed the warehouse from which Hope 4 the Heart conducted its food distribution activities. The fire did not damage the building housing the administrative office and Hope 4 the Heart has continued its administrative operation on site through the present. On October 30, 2008, Respondent County of Alameda approved an Administrative Conditional Use Permit to allow for placement of a temporary commercial tent on the Meekland property. (AR 350-351.) Hope 4 the Heart erected the tent, continued to operate its food distribution operation from the tent, and continued to conduct its administrative operations on site.

"On March 30, 2010, the Alameda County Board of Supervisors approved the new Eden Area general Plan, which changed the land use designation of the Meekland property from industrial to commercial. On February 8, 2011, Hope 4 the Heart submitted an application for Conditional Use Permit ('CUP') and variance that would allow construction of a 4,600 square foot warehouse for food storage and distribution. A staff report submitted to the West Valley Board of Zoning Adjustments (WBZA) in anticipation of the hearing on the application noted that the proposed food storage and distribution facility was not consistent with the (new) General Plan, but found that the use proposed by Hope 4 the Heart was appropriate because the use had been in operation since 2000, when the site was designated as industrial under the 1983 Unincorporated Eden Area Portion Plan. The WBZA heard and unanimously approved the application at a public hearing on May 11, 2011, and adopted Resolution No Z-11-36 setting forth the

2

board's findings for the CUP. In approving Resolution No. Z-11-26, the WBZA made seven specific findings, including, *inter alia*:

"(a) The use is required by the public need as the operation has been in existence since 2000 at the current location and use provides a service to needy families in Alameda County.

"(b) The use will be properly related to other land uses . . . as the existing use is appropriate with the adjacent industrial and commercial uses.

"(c) The use, if permitted, under all the circumstances and conditions of this particular case, will not . . . be materially detrimental to the public welfare or injurious to Meekland property or improvements in the neighborhood.

"(d) The use will not be contrary to the specific intent clauses of performance standards established for the District in which it is to be considered as the site is zoned as an industrial district.

"(AR 16.)

"Petitioner is a resident of Eden Township. On May 20, 2011, Petitioner appealed the WBZA's decision to the Alameda County Board of Supervisors. On June 28, 2011, the Board conducted a public hearing during which the Board was presented with and considered a June 21, 2011 staff report prepared by the Alameda County Community Development Agency Planning Department. (AR 24-27.) The June 21, 2011 report noted that the County's planning staff had worked with Hope 4 the Heart 'establishing the temporary tent with an agreement that an administrative conditional use permit (ACUP) *would be the first step in bringing the facility up to code and in compliance with the zoning ordinance and general plan*.' (AR 25 emphasis supplied).) The planning staff also reported to the Board of Supervisors that 'Due to the level of resources needed to prepare a full CUP application, Planning allowed the use to be re-established and legalized incrementally, starting with an administrative permit, followed by a complete CUP application.' (AR 25.) The report to the Board of Supervisors also acknowledged the quandary posed by the planning staff simultaneously pursuing a course of incremental legalization, at the same time it was working to update the General Plan:

3

" 'As Hope 4 the Heart was pursuing funding and working on their CUP application, the process to update the Eden General Plan was also nearing completion, and in March 2010 was approved by the Board of Supervisors. The land use designation of the site occupied by Hope 4 the Heart was changed from Manufacturing (Industrial) to Commercial in anticipation that portions of Meekland would transition to more commercial uses in coming years. This change took place after Hope 4 the Heart had obtained their administrative use permit, but before their full CUP application had been submitted.' (AR 25.)

"On June 28, 2011, the Board of Supervisors heard Petitioner's appeal, and unanimously affirmed the WBZA decision, subject to 24 conditions. The Board's resolution (Resolution No. R-2011-230) affirming the WBZA's decision and approving Petitioner Hope 4 the Heart's CUP application, specifically recited the Board's consideration of the staff report submitted to the Board, and the decision of the WBZA. (AR 33-37)

"On September 8, 2011, Petitioner filed this timely petition for writ of mandate contending that the County abused its discretion in approving the CUP because the proposed use is in conflict with the Eden Area General Plan."

The court then set forth the applicable standard of review—substantial evidence—and then moved to the merits.

"Petitioner argues that Respondent County of Alameda made one procedural and two substantive errors in granting a conditional use permit to Respondent Hope 4 the Heart. Petitioner first contends that the Board of Supervisors erred procedurally when it approved the conditional use permit because it did not adopt Resolution R-20011-230, and the resolution did not contain findings as required by law. Second, Petitioner alleges that Respondent County of Alameda substantively erred in approving the conditional use permit because the zoning ordinance applied to the permit conflicted with the Eden Area General Plan adopted in 2010, and because the proposed conditional use is in conflict with the Eden Area General Plan.

4

<u>"Resolution R-20011-230 Was Adopted By The Board of Supervisors With Findings
To Support The Granting of the Conditional Use Permit</u>.

"Petitioner alleges Resolution R-20011-230 'was not adopted by and did not
include any findings to support the decision of Alameda County,' and argues that these
alleged omissions render the conditional use permit invalid. As authority for his premise,
Petitioner cites to *Topanga Assn. for a Scenic Community v. County of Los Angeles*
(1974) 11 Cal.3d 506, 514-515 (*Topanga*).

"Preliminarily, the Court notes that the first of Petitioner's contentions—that
Resolution R-20011-230 was not adopted by the Board of Supervisors— is not supported
by the record before the Court. A certified copy of Resolution R-20011-230, together
with a transcript of the hearing during which the Board of Supervisors considered and
approved the conditional use permit both are part of the administrative record. In the
absence of any evidence to the contrary, the Court must presume that the Board of
Supervisors regularly performed its official duties. (Evidence Code section 664.) The
Court has reviewed the administrative record, including Resolution R-20011-230, the
supporting staff report and WBZA Resolution Z-11-36 and finds no error.

"The statement of the factual and legal basis for the Board of Supervisors'
decision did not have to 'be stated with the formality required in judicial proceedings.'
(*Topanga*, *supra*, 11 Ca1.3d at 517, n. 16.) Formal written findings are not required
where the action of a board of supervisors in effect adopts a planning commission's
findings. (*Carmel Valley View, Ltd. v. Board of Supervisors* (1976) 58 Cal.App.3d 817,
823.) The required findings need only enable a reviewing court to trace and examine the
agency's mode of analysis and bridge the analytic gap between the evidence and decision
and legal basis for the decision. (*Topanga*, *supra*, 11 Ca1.3d at 515.)

"Resolution R-20011-230, affirmed the WBZA's grant of the conditional use
permit and made specific reference to the June 21, 2011 staff report submitted to the
Board of Supervisors. The WBZA's Resolution Z-11-36, contains extensive factual
findings and cites to the evidence considered at the time the conditional use permit was
granted. These, and other references in the resolution are specific enough to allow the

Court to 'examine the agency's mode of analysis' and to determine the link between the 'evidence and decision and legal basis [for the decision]'. (*Topanga*, *supra*, 11 Ca1.3d at p. 515.)

"Even if the findings of the Board of Supervisors were determined to be insufficient, there has been no showing that any such insufficiency was prejudicial to Petitioner, and no basis to remand for additional findings. (*Saad v. City of Berkeley* (1994) 24 Cal.4th 1206, 1215.) In the absence of some showing of prejudicial abuse of discretion, and in view of the extensive administrative findings in the record, the Court finds no basis for remand.

"Respondent Did Not Abuse Its Discretion in Approving The Conditional Use Permit.

"Petitioner contends that Respondent Alameda County abused its discretion in approving the conditional use permit because the proposed use conflicted with the Eden Area General Plan, and because the zoning ordinance applied was in conflict with the Eden Area General Plan. Specifically, Petitioner argues that the proposed use of the Meekland Property is in conflict with the Eden Area General Plan, and was not a permitted use under the zoning regulations in effect before the adoption of the Eden General Plan. The Court has considered both of Petitioner's arguments in light of the record and finds them to be without merit.

"Policies in a general plan reflect a range of competing interests and an agency must be allowed to weigh and balance the plan's policies when applying them, and it has broad discretion to construe its policies in light of the plan's purpose. (*Anderson First Coalition v. City of Anderson* (2005) 130 Cal.App.4th 1, 173; *San Franciscans Upholding the Downtown Plan v. City and County of San Francisco* (2002) 102 Cal.App.4th 656.) In order to set aside the County's determination, the Court must find that the County has acted arbitrarily, capriciously, or without evidentiary support. (*Ibid.*)

"Hope 4 the Heart had operated its business (albeit a non-profit business) continuously for a substantial period of time—uninterrupted since 2000— notwithstanding the fact of a fire destroying its warehouse. At the time it commenced

6

operation, Hope 4 the Heart's use of the Meekland Property—though unpermitted—was consistent with both the zoning ordinance and the General Plan in effect at that time. After the 2008 fire destroyed its warehouse (but not its administrative offices), Hope 4 the Heart sought to legalize its use and was in fact issued a temporary conditional use permit to continue operating its food distribution program from a tent.

"After 2008, with the county's concurrence and advice, Hope 4 the Heart pursued a strategy of incremental legalization, and expended money and obtained funding to rebuild the distribution center (including funding from the County.) At the same time Hope 4 the Heart was pursuing the strategy of incremental legalization with the County's support and concurrence, the County, was revising the Eden Area General Plan. It is only because of fortuitous (or rather unfortuitous) timing amounting to a matter of months, that Hope 4 the Heart's application for a conditional use permit was not submitted to the County and approved before the Board of Supervisors' March 2010 vote on the Eden General Plan. Considering all of these factors, the County determined, in the exercise of its discretion, that Hope 4 the Heart's use should be 'grandfathered' in and a conditional use permit should issue.

"Petitioner concedes that the prior use of the Meekland Property as a food storage and distribution center could have been a conditionally permitted use under the prior M-1 (light industrial) zoning, but argues that the use was illegal because Hope 4 the Heart did not apply for a conditional use permit and a conditional use permit was not granted before the general plan was amended. Petitioner's contention does not do justice to the record. The County determined that under the zoning regime in effect at the time of Hope 4 the Heart operated, its use was consistent with the zoning then in effect, and Hope 4 the Heart in fact applied for and was granted an temporary administrative conditional use permit before the Eden Area General Plan was amended. Hope 4 the Heart continued to operate on the Meekland Property after the administrative conditional use permit expired while contemporaneously preparing an application for a permanent conditional use permit pursuant to the County's decision to allow incremental legalization for the then present use of the site.

7

"Before it granted the conditional use permit to Hope 4 the Heart, the County considered, among other things, the fact of an administrative conditional use permit having been issued to Hope 4 the Heart before the adoption of the Eden Area General Plan, the length of time the Meekland Property had been in use without complaints, the services the use would provide to the county residents, the relation to other land uses, the absence of detriment to the public welfare and neighborhood, and the fact that the County had pursued a policy of incremental legalization with respect to the Hope 4 the Heart project, and determined to grant the permit. The County's determination was supported by substantial evidence. There was no abuse of discretion.

"The County's Grandfathering of Hope 4 the Heart's Use Was Supported By Substantial Evidence.

"When making a decision to grant or deny a conditional use permit, an administrative agency must consider whether the decision affects a vested right which has been legitimately acquired or is otherwise vested, and whether that right is of a fundamental nature from the standpoint of its effect in human terms and the importance. (*Goat Hill Tavern v. City of Costa Mesa* (1992) 6 Cal.App.4th 1519, 1525-1526 (*Goat Hill Tavern*).) When such a right is found to be present, in the face of a denial, mandate will issue to compel the issuance of the permit even in the face of a clear conflict with a municipality's general plan. (*Id.* at pp. 1525-1526.) Whether an administrative decision substantially affects a fundamental vested right must be decided on a case-by-case basis. (*Id.* at p. 1526.)

"In *Goat Hill Tavern*, a restaurant owner who had operated his restaurant for over 35 years as a legal nonconforming use made substantial investments in his property, including improvements requested by the city, and sought a conditional use permit to allow the addition of a game room, which was granted on a temporary basis. (*Goat Hill Tavern*, *supra*, 6 Cal.App.4th at p. 1529.) When the permit expired, the city contended the owner had lost all right to continue his business and denied the owner a conditional use permit to continue his business. (*Id*. at pp. 1523-1524.) The trial court applied the independent judgment test and granted a writ of mandate ordering the city to issue the

8

permit. (*Id*. at pp. 1529-1531.) The Court of Appeal affirmed the trial court. (*Id*. at p. 1531.)

"Similarly, in *Stanson v. San Diego Coast Regional Com*. (1980) 101 Cal.App.3d 38, the plaintiff, in reliance on the coastal commission's representation that he did not need a permit to remodel his restaurant, obtained building permits and expended significant funds to remodel his home. The coastal commission subsequently denied the plaintiff's application for a conditional use permit to legalize the use of the property. The appellate court held that, under these circumstances, the plaintiff had acquired a vested right to construct his building, found that the court should have used the independent judgment standard, and reversed the trial court's denial of the plaintiff writ of mandate. (*Id.* at pp. 49-51.)

"*Goat Hill Tavern* and *Stanson* are procedurally distinguishable from the case at bar because in those cases the petitioner was the property owners with the vested interest whereas in this case Petitioner is a member of the public asserting a claim under Government Code 65860. Nevertheless, the principles underlying both cases strongly suggest that the County had to consider the interests of Hope 4 the Heart very carefully in deciding whether to approve Hope 4 the Heart's conditional use permit.

"The record before the Court reflects that the planning staff of the WBZA, the WBZA Board, and the Board of Supervisors gave careful consideration and significant weight to the fact of Hope 4 the Heart's long term use of the Meekland Property for food distribution, to the fact of the organizations substantial investment in the Meekland Property in the form of obtaining funds and grants to finance its present and future operations—approximately $350,000—and the fact of the County's decision to incrementally legalize for Hope 4 the Heart's land use contemporaneously with the County's pursuit of the amendments to the Eden Area General Plan.

"It is not necessary for the Court to reach, and the Court does not reach, the issue of whether on the facts of this case, Hope 4 the Heart's long term use and expenditure of time, money and effort in pursuit of replacing its warehouse and continuing its food distribution operations ripened into a vested right within the meaning of *Goat Hill Tavern*

9

and *Stanson*. Under the substantial evidence test the Court is only required to determine, under the facts of this case based on the administrative record, whether the County abused its discretion when it granted the conditional use permit. The record reflects that the County in determining to grant the conditional use permit considered many of the same factors cited by appellate courts in *Goat Hill Tavern* and *Stanson* as indicia of a vested right to continue an existing land use in the face of a potential conflict with a general plan, and in consideration of these factors, exercised its discretion and granted the conditional use permit.

"The Court rejects Petitioner's truncated view of the record and of the law applicable to the issue before the Court. Under Petitioner's rationale and application of the law, there is no set of circumstances under which a governmental body could approve land use potentially conflicting with a later adopted general plan. The record in this case demonstrates the County's careful consideration of the length and nature of the past and proposed future use of the Meekland Property, its decision to allow a process of incremental legalization of the existing use, and Hope 4 the Heart's expenditure of substantial time and effort and money to pursue a conditional use permit incrementally with the concurrence of the County's planning staff. On this record the County was well within its discretion to grant the requested conditional use permit. There was no abuse of discretion and the County's decision is supported by substantial evidence."

Following entry of judgment, Hancocks perfected this timely appeal.

### REVIEW

### Preliminaries

Several points must be made at the outset.

"The issuance of a conditional use permit is a quasi-judicial administrative action, which the trial court reviews under administrative mandamus procedures pursuant to Code of Civil Procedure section 1094.5. [Citation.] Except in a limited class of cases involving fundamental vested rights [citation], the trial court reviews the whole administrative record to determine whether the agency's findings are supported by substantial evidence and whether the agency committed any errors of law. [Citations.]"

10

(*Neighbors in Support of Appropriate Land Use v. County of Tuolumne* (2007) 157 Cal.App.4th 997, 1005.) On appeal from a denial of a petition for writ of administrative mandamus, " 'if the superior court properly applied substantial evidence review because no fundamental vested right was involved, then the appellate court's function is identical to that of the trial court. It reviews the administrative record to determine whether the agency's findings were supported by substantial evidence, resolving all conflicts in the evidence and drawing all inferences in support of them.' " (*Tennison v. California Victim Comp. & Government Claims Bd.* (2007) 152 Cal.App.4th 1164, 1181.) Here, the trial court applied the substantial evidence standard to its review of the Board of Supervisors' denial of Hancocks's administrative appeal. Hancocks does not claim that he has any fundamental right that warrants a different standard.

Applying the substantial evidence standard of review, we presume that the Board's denial does in fact have the support of substantial evidence, and it is Hancocks's burden to demonstrate the contrary. (*McAllister v. California Coastal Com.* (2008) 169 Cal.App.4th 912, 921-922.) However, Hancocks makes no real effort to carry this burden. Thus, even though the trial court order quoted at such length is replete with citations to the administrative record, Hancocks does not attempt to prove that the cited portions of the record do not support the construction of them adopted by the trial court. Moreover, there is nothing like a summary of the entire three-volume administrative record. These omissions are by themselves sufficient to defeat Hancocks's appeal. (*Toigo v. Town of Ross* (1998) 70 Cal.App.4th 309, 317.)

" 'Instead of a fair and sincere effort to show that the trial court was wrong, appellant's brief is a mere challenge to respondents to prove that the court was right. And it is an attempt to place upon the court the burden of discovering without assistance from appellant any weakness in the arguments of the respondent. An appellant is not permitted to evade or shift his responsibility in this manner.' [Citations.] . . . [I]t is no more than a rehash of arguments about the strength of the evidence, which is not open on appeal." (*Paterno v. State of California* (1999) 74 Cal.App.4th 68, 102; accord *Sutter Health Uninsured Pricing Cases* (2009) 171 Cal.App.4th 495, 505.) Put another way,

11

Hancocks cannot simply reiterate arguments that lost in the trial court without attempting to demonstrate error and prejudice. (*Guthrey v. State of California* (1998) 63 Cal.App.4th 1108, 1115.) This is precisely what Hancocks does. Although he contends in effect that every single conclusion and finding made by the trial court "was in error and not supported by the evidence," he virtually ignores the reasoning the trial court so carefully explicated.

**The Merits**

Hancocks's first contention is that "the decision of the trial court that Resolution R-2011-230 was adopted by the county with findings to support the County's granting of a conditional use permit was in error and not supported by the evidence." The trial court correctly noted that our Supreme Court held that "implicit in section 1094.5 is a requirement that the agency which renders the challenged decision must set forth findings to bridge the analytic gap between the raw evidence and ultimate decision or order." (*Topanga*, *supra*, 11 Cal.3d 506, 515.) The administrative agency's findings " 'need not be stated with the formality required in judicial proceedings' [citation], they nevertheless must expose the board's mode of analysis to an extent sufficient to serve the purposes' " of "meaningful judicial review." (*Id*. at p. 517 & fn. 16.)

As the trial court further noted, the Board of Supervisors' decision does not have to be examined to be in isolation. The trial court's citation of *Carmel Valley View, Ltd. v. Board of Supervisors*, *supra*, 58 Cal.App.3d 817 was particularly apposite. There, Division Four of this District held that when a board of supervisors denies an administrative appeal without making findings of its own, it will be deemed to have "in effect adopted" the findings of the agency whose decision was being appealed. (*Id*. at p. 823.) Using this logic, the "adopted" findings here would be those of the WBZA, the ones quoted in the trial court's order. The adequacy of those findings are not challenged by Hancocks. Those findings are more than sufficient to " 'expose the board's mode of analysis' " and permit "meaningful judicial review." (*Topanga*, *supra*, 11 Cal.3d 506, 517 & fn. 16.) Hancocks's first contention cannot be sustained.

12

The remainder of Hancocks's arguments are devoted to attacking the substance of the trial court's denial of his petition. A central feature of those arguments is Hancocks's insistence that "the existing use as a warehouse for food storage and distribution was NOT, and never was, a lawful use," and thus "was operating illegally and in violation of both the . . . Eden Area General Plan" and the "Alameda County Zoning Ordinance." It seems undisputed that the facility was operated without benefit of the appropriate permit, at least up to the point it was given an administrative conditional use permit in October 2008. Whether the operation was a conforming use under zoning standards appears to be a question on which even Hancocks remains unsure. An answer is not required because a variance was a part of the conditional use permit granted by the WBZA and upheld by the Board of Supervisors. Thus, any past illegality about which Hancocks is so vehement becomes academic if the conditional use permit—and with it, the zoning variance—is not overturned.

As for the matter of the Eden Area General Plan, unlike the Alameda County Zoning Ordinance, Hancocks does not cite provisions or language from it in his brief. No version of the plan, either in original or amended form, is in the administrative record or the record on appeal. Lacking verification, Hancock's naked assertions of the plan being violated will be disregarded. (Cal. Rules of Court, rule 8.204(a)(1)(C); *Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295-1296; *Nazari v. Ayrapetyan* (2009) 171 Cal.App.4th 690, 694, fn. 1.)

In any event, it was the same Board of Supervisors considering Hancocks's appeal that had recently adopted the new plan. That dual status invests the denial of that appeal with a special entitlement to judicial deference: "Courts accord great deference to a local governmental agency's determination of consistency with its own general plan, recognizing that 'the body which adopted the general plan in its legislative capacity has unique competence to interpret those policies when applying them in its adjudicatory capacity.' " (*Eureka Citizens for Responsible Government v. City of Eureka* (2007) 147 Cal.App.4th 357, 373.) Thus, when that Board believes that the resumption of operations at the food distribution facility would, if given a permit and variance, be

13

consistent be consistent with both the new general plan *and* the old one, that judgment must be accorded considerable respect. Although not expressly mentioned by the trial court, such a respect is entirely compatible with the trial court's decision to deny Hancocks's appeal.

The belief of the Board of Supervisors just mentioned was based on the planning staff report referenced and quoted in the trial court's order. By itself, it qualifies as substantial evidence. (*La Costa Homeowners' Assn. v. California Coastal Com.* (2002) 101 Cal.App.4th 804, 818-819; *City of Walnut Creek v. County of Contra Costa* (1980) 101 Cal.App.3d 1012, 1017; *Coastal Southwest Dev. Co. v. California Coastal Zone Conservation Com.* (1976) 55 Cal.App.3d 525, 536.) Finally, it was that report which apparently introduced the concept of "incrementalized legalization" which Hancocks finds so objectionable, calling it a "fiction" that was "created" by the trial court. But neither the Board of Supervisors nor the trial court was legally obligated to agree with Hancocks's opinion that what might have been an unpermitted use must forever remain an illegal use.

## DISPOSITION

The judgment is affirmed.

_____

Richman, J.

We concur:

_____

Kline, P.J.

_____

Haerle, J.