Filed 4/28/16

<u>CERTIFIED FOR PARTIAL PUBLICATION</u>[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| CALIFORNIA PUBLIC RECORDS RESEARCH, INC., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> COUNTY OF STANISLAUS, <br><br> Defendant and Respondent. | F070601 <br><br> (Super. Ct. No. 2006090) <br><br><br> **OPINION** |

        APPEAL from a judgment of the Superior Court of Stanislaus County.  William A. Mayhew, Judge.

        Donald W. Ricketts for Plaintiff and Appellant.

        Porter Scott, Terence J. Cassidy and Taylor W. Rhoan for Defendant and Respondent.

        Jennifer B. Henning for California State Association of Counties as Amicus Curiae on behalf of Defendant and Respondent.

        Robert E. Grossglauser III for County Recorders' Association of California as Amicus Curiae on behalf of Defendant and Respondent.

-ooOoo-

---

[*]        Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part IV of the Discussion.

Plaintiff California Public Records Research, Inc. sought a writ of mandate to compel the County of Stanislaus (County) to reduce the fees it charges for copies of official records. Plaintiff alleged the fees of $3 for the first page and $2 for each subsequent page exceeded County's cost of providing the service and, therefore, violated Government Code section 27366,[1] which states that copying fees "shall be set by the board of supervisors in an amount necessary to recover the direct and indirect costs of providing the product or service …."

The trial court denied the writ, concluding (1) County's board of supervisors did not abuse its discretion in setting the copying fees and (2) the fees did not constitute a special tax requiring voter approval. Plaintiff appealed, contending there is insufficient evidence to support a finding that the fees charged are based on the actual costs of providing the copies. For instance, plaintiff contends there was no evidence showing it costs County $33 to provide a copy of a deed of trust on the standard 16-page form.

The evidence presented shows the board of supervisors based its decision on a 2001 study that estimated staff spent an average of three minutes processing a copy request and further estimated productive staff time cost County about $0.99 per minute. Multiplying these two figures, the 2001 study estimated it cost County an average of $2.97 to process a request for a copy of an official record. Critical to the outcome of this appeal is the fact that the 2001 study and other evidence presented information on a per document basis, *not a per page basis*. Despite the lack of cost-per-page information, the study recommended charging $3 for the first page copied and $2 for each subsequent page.

The absence of evidence addressing costs on a per page basis and the estimate that it costs County $2.97 to process the *average* copy request leads us to conclude the record lacks evidence showing that the fees charged per page reflect County's actual costs.

---

[1] All unlabeled statutory references are to the Government Code.

Indeed, the information in the 2001 study affirmatively shows it does not take five minutes or cost County $5 to provide a copy of a two-page document. This affirmative showing is coupled with a complete lack of evidence that (1) it takes 15 minutes or costs County $15 to provide a copy of a seven-page document; (2) it takes 45 minutes or cost County $45 to provide a copy of a 22-page document; or (3) it takes over an hour or costs County $61 to provide a copy of a 30-page document.

Accordingly, County's board of supervisors abused its discretion when it set the copying fees. A writ of mandate should issue directing the board to comply with section 27366 by resetting the copying fees "in an amount necessary to recover the direct and indirect costs of providing the [copies]."

We therefore reverse the judgment and remand for further proceedings.

## FACTS

### 1988 Study

In 1988, County commissioned Northern California Research Associates, with Peter Lauwerys acting as principal consultant, to study the actual costs related to certain fees charged by its clerk's office. The 1988 study did not address the costs of providing copies of real property records maintained by the clerk-recorder's office because those fees were fixed by statute at one dollar for the first page and fifty cents for each additional page. (See Stats. 1984, ch. 1397, § 6, p. 4907 [former § 27366].)

### 1994 Study

In 1993, the Legislature amended section 27366 to eliminate the fixed copying fees and directed counties to set the fee "in an amount necessary to recover the direct and indirect costs of providing the product or service." (Stats. 1993, ch. 710, § 3, p. 4039.) In December 1993, County hired Government Finance Research (GFR) to conduct a cost recovery and fee study for selected services provided by the clerk-recorder's office, including the cost of providing copies of official records.

In January 1994, GFR completed the study and delivered it to County. The document did not identify the principal consultant or any other person who worked on its preparation. The study quoted the recently amended section 27366 and section 54985, which set forth limits for certain fees not covered by section 27366.

The 1994 study's approach to determining the cost of providing a service was based on time—that is, the average number of minutes taken by staff to provide the service was multiplied by an estimate of the per minute cost of staff time. The study estimated the regular cost for the activities of the clerk-recorder's office at $0.77 per minute of productive time. This estimate included staff salary, overhead costs, indirect costs of supplies and services, supervision costs, administrative support services, building and facilities costs, amortized costs of computers and certain improvements, and inflation.

As to providing copies of official records, the 1994 study found: "An average of 8 minutes (rounded to the nearest minute) is allocated per unit of service, including general and support time. [¶] The cost to the County of processing requests for official copies of records [is] 8 minutes @ $.77 per minute = $6.16." The study also concluded "that additional pages of any document take an average of one minute *per document* to process and copy," representing a cost to County of $0.77. (Italics added.)[2] The general process of copying and certifying official records was divided into 12 steps described in Appendix B to the 1994 study. The steps included the clerk asking the customer for the year the document was recorded, the document number or the book and page number; the clerk directing the customer to the appropriate microfiche or tape to search for the document; the customer bringing the microfiche or tape to the clerk after locating the document; and the clerk putting the microfiche or tape into the copy machine.

---

[2]     The phrase "per document" is italicized to emphasize that the average of one minute is the time spent copying *all* additional pages of a document and is not the time spent on *each* additional page.

The 1994 study recommended charging $6 for the first page of a copy of a recorded document and adjusting the fee for each subsequent page from $0.50 to $1. The study also estimated the impact of the new fees on revenue. The revenue on 6,600 first pages duplicated was estimated to increase from $6,600 to $39,600, or a total increase of $33,000. Revenue from copying 23,200 subsequent pages was estimated to increase from $11,600 to $23,200. Consequently, the proposed adjustment to copying charges was predicted to increase revenue by $44,600. The data of 6,600 first pages and 23,200 subsequent pages can be used to calculate that the average length of the documents copied was 4.52 pages (i.e., [6,600 + 23,200]/6,600 documents).

*2001 Study*

In 2000, County again hired GFR to study the costs related to selected fees charged by the clerk-recorder and to recommend cost recovery and fee adjustments. The study was completed in February 2001 and identified Peter Lauwerys as the principal consultant. The study addressed 16 categories of charges and fees, including the issuance and duplication of marriage licenses, fictitious business name filings, notary bond filings, administrative fees for environmental impact reports, power of attorney filings, and the copying of official records. The study referred to the requirements in sections 54985 through 54987 and mentioned the 1993 amendment of section 27366.

The 2001 study, like the previous study, estimated the cost of a particular service by multiplying (1) the amount of staff time used to provide the service by (2) the cost to County of that staff time. The time figure included an estimate of the average number of minutes needed by staff to provide the service plus an allocation of general and support minutes. The consultant determined the average number of minutes by evaluating tracking forms completed by County's staff, which estimated the time spent performing the tasks involved in providing the service.[3] The resulting time figure was multiplied by

---

**3** There are no tracking forms for the time spent on copying official records attached to the 2001 study or otherwise included in the appellate record. In a 2013 deposition

5.

the cost per minute of productive staff time, which produced an estimated average cost for the service.

The 2001 study updated the per minute estimate of the regular cost of activities of the clerk-recorder's office from $0.77 to $0.99. The formula for estimating costs included eight line items: (1) individual staff salary; (2) County's indirect costs, which were referred to as overhead; (3) indirect costs related to services and supplies;[4] (4) management and supervision costs; (5) costs accounting and bookkeeping staff services provided to the clerk-recorder's department by County's financial services section; (6) costs of automation, services modernization and improvements, including software and training; (7) the cost of the 2001 study itself;[5] and (8) lease and utility costs for the clerk-recorder's office not included in the figure for County's overhead. Aggregating these items produced an estimate of $101,287 as the annual costs for a single staff member. When divided by 1,726 productive hours of time per year, the cost per hour figure was $58.69, which GFR rounded up to $59 per hour and, rounding up again, equated to $0.99 per minute of productive time.

---

taken in plaintiff's litigation with the County of Yolo, Lauwerys testified that a tracking form was not needed to capture the time spent copying official records because "it's very straightforward. Three items, three activities, or two activities." Plaintiff interprets this testimony to mean *no timing* was required to determine the time it took to service requests for copies. We reject this interpretation of the evidence because it does not support the trial court's decision and, instead, conclude the trial court impliedly found that staff informally recorded their time spent on copy requests and did not need a special tracking form.

[4]     The 2001 study does not explicitly mention the cost of the paper and toner cartridges used to provide copies. Thus, it appears those costs were included in the "services and supplies" line item, which the study described as "those costs other than actual employee costs and employee benefit costs."

[5]     The cost of the study was amortized over three years and was the fourth largest cost item, adding $3.21 to the per hour cost of staff. This amortization may have been incorrect because it appears that the cost was allocated to a single employee instead of being spread among 29 full-time equivalent employees like certain other expenses were.

6.

Part IV of the 2001 study was labeled "Cost-Recovery Estimation" and provided cost estimates for the 16 categories of charges and fees addressed. As to copying costs, the study stated that section 23766 allowed "fees for the duplication of official records in order 'to recover the direct and indirect costs of providing the product or service.'" The study then stated:

> "The consultants' study indicated that Stanislaus County staff spends an average of three minutes for duplication of official records. The costs are therefore [¶] 3 minutes @ $0.99 per minute = $2.97."

Part V of the 2001 study recommended adjusting the fees for copying official records maintained by the clerk-recorder's officer by lowering the fee for the first page from $6 to $3 and increasing the fee for subsequent pages from $1 to $2.[6] The study did not explain how the estimated cost of $2.97 for the "average of three minutes for duplication of official records" related to its *per page* recommendations. In particular, the study did not say whether the three-minute average covered pulling the document and copying *all* pages or copying just the *first* page. In addition, the study did not address the amount of time spent copying subsequent pages of official records, which implies that activity was included in the "average of three minutes for duplication of official records."

Part VI of the 2001 study provides, in table format, estimates of the impact on revenues of the proposed fee adjustments. The table states that the copying fees for the fiscal year 1999-2000 totaled $55,870 for 18,575 "units" and predicts that the proposed fees will reduce revenue to $44,725 (about 80 percent of the prior total), resulting in a loss of $11,145 in revenue. The study did not identify what it meant by a "unit," but the figures provided suggest a "unit" is a page, not an entire document. For instance, revenue

---

[6] The proposed change in fees would result in a lower charge for documents of three pages or less, the same charge (i.e, $9) for four-page documents, and a higher charge for documents with five or more pages. Under the proposal, the fee for a copy of a deed of trust on a 16-page form (which plaintiff alleges is the standard length) would increase from $21 to $33.

7.

of $55,870 for 18,575 units yields an average revenue per unit of approximately $3.01. With a fee of $6 for the first page of a document, it is mathematically impossible to average $3.01 in revenue per document. Therefore, lacking further information about a "unit," the only rational inference is that a "unit" refers to a page.

Applying basic algebra to the average fee per page (i.e., $55,870/18,575 pages) and the information contained in the prior fee structure leads to the conclusion that about 7,459 documents were pulled and each document contained, on average, slightly under two and a half pages.

*County's 2014 Declarations*

County's evidence in this case included May 2014 declarations from its auditor-controller and its assistant clerk-recorder. The auditor-controller, a certified public accountant, stated she attempted to verify the figures used in the 2001 study, but the supporting documents going that far back were not available. She summarized the consequences by stating: "Thus, we do not know all the specific cost figures from the financial records that Mr. Lauwerys used to do his line item calculations in the 2001 Fee Study."

The auditor-controller's declaration also addressed the meaning of the terms "direct costs" and "indirect costs." She opined that an appropriate definition of indirect costs would not be limited to the ancillary costs necessarily associated with the retrieval, inspection, redaction and handling of the document.

County's assistant clerk-recorder stated that three minutes was still a fair assessment of the typical amount of time that staff members spend with customers in providing copies of recorded documents, but some customers require more time than others. His declaration also stated (1) official documents dating back to 1978 were digitized; (2) official documents, even if digitized, must be maintained on microfilm or paper; (3) storing official documents on microfilm is less costly than maintaining paper versions and, therefore, County spends money to store and maintain all recorded

documents on microfilm; (4) providing a copy of an official record that is not digitized and is available only on microfilm frequently takes more than three minutes; and (5) approximately 30 percent of all copies of official records currently produced are made from microfilm. The process of making copies of a document from microfilm requires the document "first be physically located, then the microfilm has to be scrolled through until it reaches the first page of the document, each page is adjusted, focused, and centered before a copy can be made. It frequently takes multiple adjustments to print a clear legible copy. If the document is more than one page, staff has to scroll to the next page and make the same adjustments."

The assistant clerk-recorder's declaration included copies of the clerk-recorder's office budget from fiscal year 2000-2001 and fiscal year 2013-2014. The 2000-2001 budget was from the year that County's board of supervisors enacted the fee adjustment, but it is not the budget relied upon by GFR and Lauwerys in the 2001 study. The 2013-2014 budget was offered to show that the costs of operating the clerk-recorder's office has increased and, therefore, the fees charged are still reasonable under present conditions.

*The 2001 Fee Ordinance*

The agenda for the June 12, 2001, meeting of County's board of supervisors included an item for the approval of the setting of a public hearing on July 10, 2001, to consider the adoption of an ordinance adjusting existing fees charged by the clerk-recorder's office. The action agenda summary prepared for this item referred to sections 54985 and 54986, stating they authorized the board to increase or decrease any fee or charge "'in the amount reasonably necessary to recover the cost of providing any product or service.'" A week later, County issued a notice of public hearing stating that the proposed ordinance relating to clerk-recorder's fees would be considered at the board's July 10, 2001, meeting.

On July 10, 2001, County's board of supervisors unanimously enacted Ordinance No. C.S. 763, which set the clerk-recorder's copy fees at $3 for the first page and $2 for each subsequent page.

**PROCEEDINGS**

In February 2014, plaintiff filed a verified petition for writ of mandate alleging the copying fees charged by County were excessive relative to the costs allowed by law. Plaintiff's causes of action alleged the copying fees (1) violated section 27366, (2) constituted an illegal special tax that violated the voter approval requirement in article XIII C of the California Constitution,[7] and (3) were adopted as the result of County abusing its limited discretion to set fees.

Later in February 2014, plaintiff filed an ex parte application of issuance of an alternative writ. The trial court issued an alternative writ of mandate directing County to file a return and appear at a hearing to show cause as to why a peremptory writ of mandate should not issue.

On August 21, 2014, following briefing and argument, the trial court filed a six-page ruling on the petition for writ of mandate. The court concluded (1) section 54985 did not apply to the copying fees charged by County; (2) the meaning of the term "indirect cost" used in section 27366 was a significant issue; and (3) the Legislature had not limited the definition of "indirect costs," which had a broad meaning when used in business and accounting. The court found the board of supervisors had not abused its discretion in setting a fee of $3 for the first page and $2 for each subsequent page. As to the constitutional claim, the court found the copying fees were not a special tax.

In September 2014, the trial court filed an order that denied the petition for writ of mandate, discharged the alternative writ, directed judgment to be entered in favor of County, and awarded County its costs.

---

[7]    Unlabeled references to articles are to the California Constitution.

10.

Plaintiff timely appealed.

## DISCUSSION

On appeal, plaintiff contends the board of supervisors abused its discretion when it enacted the copying fees because (1) there was no substantial evidence supporting the fee amounts enacted; (2) the board based its decision on the wrong statute; and (3) it sought to recoup costs that were not allowed by the correct statute, section 27366. Plaintiff also contends the trial court erred in determining the copying fees were not a special tax imposed in violation of the voter approved requirements of article XIII C.

I.      PETITION FOR WRIT OF ORDINARY MANDATE

A.      The Writ

Code of Civil Procedure section 1085, subdivision (a) provides that a writ of ordinary mandate "may be issued by any court to any inferior tribunal, corporation, board, or person, to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station .…"

"Mandamus … is the traditional remedy for the failure of a public official to perform a legal duty." (*Common Cause v. Board of Supervisors* (1989) 49 Cal.3d 432, 442.) Mandamus will not lie to control a public agency's discretion—that is, to force the exercise of discretion in a particular manner—but it will lie to correct abuses of discretion. (*Klajic v. Castaic Lake Water Agency* (2001) 90 Cal.App.4th 987, 995 (*Klajic*).)

B.      Standards of Review

When a court reviews a public entities' decision for an abuse of discretion, the court may not substitute its judgment for that of the public entity, and if reasonable minds may disagree as to the wisdom of the public entity's discretionary determination, that decision must be upheld. (*Klajic*, *supra*, 90 Cal.App.4th at p. 995.) Thus, the judicial inquiry in an ordinary mandamus proceeding addresses whether the public entity's action

11.

was arbitrary, capricious or entirely without evidentiary support, and whether it failed to conform to procedures required by law. (*Neighbors in Support of Appropriate Land Use v. County of Tuolumne* (2007) 157 Cal.App.4th 997, 1004.)

When an appellate court reviews a trial court's judgment on a petition for a traditional writ of mandate, it applies the substantial evidence test to the trial court's findings of fact and independently reviews the trial court's conclusions on questions of law, which include the interpretation of a statute and its application to undisputed facts. (*Klajic*, *supra*, 90 Cal.App.4th at p. 995.) The substantial evidence test applies to both express and implied findings of fact. (*Rey Sanchez Investments v. Superior Court* (2016) 244 Cal.App.4th 259, 262; see *Madera Oversight Coalition, Inc. v. County of Madera* (2011) 199 Cal.App.4th 48, 66 [under presumption that trial court's order is correct, appellate court infers trial court made implied findings of fact consistent with its order, provided such findings are supported by substantial evidence].)

## II. SUFFICIENCY OF EVIDENTIARY SUPPORT FOR FEE SCHEDULE

### A. Scope of the Evidence

Plaintiff's contention that there is no substantial evidence to support the board of supervisors' decision to charge $3 for the first page and $2 for each additional page for copying official records presents the threshold question of what evidence this court may consider in conducting its review. As a result, before analyzing the sufficiency of the evidence, we address what evidence may be considered and what evidence should be excluded from our review.

#### 1. Evidence Before the Board

Plaintiff argues our review of the sufficiency of the evidence should be limited to the evidence actually before the board when it approved the new copying fees. Plaintiff contends that the sole information provided to the board was the staff recommendation. Under this view of the evidence, the 2001 study, Lauwerys's 2013 deposition transcript,

12.

and the May 2014 declarations of County officials were not part of the record of the board's proceedings and, therefore, should be omitted from our evaluation of the sufficiency of the evidence.

In response, County contends that plaintiff's assertion about the information before the board of supervisors is factually incorrect. County cites the declaration of the assistant clerk-recorder, which states that when the board of supervisors approved the copying fees it relied upon the 2001 study, the board memo/agenda minutes recommending the adoption of the fee schedule by ordinance, and the resolution approved by the board after the hearing.

In the trial court, plaintiff objected to the assistant clerk-recorder's declaration on the ground that he was not "in the office in 2001 and his testimony is incompetent hearsay." The trial court did not explicitly rule on this objection. Therefore, we infer the trial court impliedly denied the objection. (See *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 (*Denham*) [trial court's judgment is presumed correct and appellate courts indulge all presumptions in its favor].) On appeal, plaintiff has not challenged this implicit evidentiary ruling. Accordingly, we accept County's factual assertion that the 2001 study was relied upon by the board of supervisors when it adopted the new copying fees.

### 2. *Deposition and Declarations*

As to the admissibility of evidence not before the board of supervisors in 2001, we are aware of the well-settled *general* rule that extra-record evidence is inadmissible in a traditional mandamus actions challenging quasi-legislative administrative decisions. (*Western States Petroleum Assn. v. Superior Court* (1995) 9 Cal.4th 559, 574.) This general rule might apply to Lauwerys's 2013 deposition transcript, the May 2014 declarations of County officials, and the clerk-recorder's office budgets for fiscal years

13.

2000-2001 and 2013-2014. Alternatively, an exception or exceptions to the general rule might apply.

As to the transcript of Lauwerys's 2013 deposition, that transcript was submitted to the court as an exhibit to plaintiff's verified petition. Thus, plaintiff has not objected to its admissibility. Therefore, we will treat the transcript as part of the evidentiary record.

As to the declarations and related attachments submitted by County, plaintiff's opening brief does not challenge the trial court's implicit denial of objections relating to those documents. Therefore, we will treat those declarations and attachments as part of the evidentiary record.

### 3. Dictionary Definitions

Plaintiff's opening brief challenges the part of the trial court's written ruling stating that "County has presented this court with admissible evidence that the term 'indirect costs' is a broad term when used in business or accounting." Plaintiff interprets this statement as an erroneous "finding that dictionary definitions are 'admissible evidence.'"

We conclude the trial court did not err in stating County presented admissible evidence about the meaning of "indirect costs." The declaration of the auditor-controller addressed the meaning of the term "indirect costs" and could have been the admissible evidence to which the court referred.

Furthermore, even if the trial court considered and relied on the dictionary definitions submitted by County, that reliance was not error. When interpreting a statute, courts "appropriately refer to the dictionary definition" to ascertain the ordinary, usual meaning of a word. (*Wasatch Property Management v. Degrate* (2005) 35 Cal.4th 1111, 1121-1122.) Moreover, mandatory language in Evidence Code section 451, subdivision (e) requires judicial notice be taken of "[t]he true signification of all English words and phrases." (See *Sierra Club v. Superior Court* (2013) 57 Cal.4th 157, 171 [Supreme Court

took judicial notice of dictionary definition of "program"]; *Golden Security Thrift & Loan Assn. v. First American Title Ins. Co.* (1997) 53 Cal.App.4th 250, 256 ["'true signification'" of a word is best derived from dictionary definitions].)

Accordingly, plaintiff has not demonstrated that relying on dictionary definitions constituted error.

### 4. Summary

Plaintiff has not shown the trial court committed evidentiary error and, therefore, we will consider all of the evidence presented to the trial court. As to the evidence that was not before the board of supervisors when it adopted the new fee schedule in 2001, it is relevant to the question whether the fee schedule is out-of-date and its continued application to present day copy requests offends the statutory and constitutional parameters for such fees.

### B. Correlating Costs to Fees

Section 27366 states that fees shall be set in an amount necessary to recover the direct and indirect costs of providing the copies of the official record. Consequently, the copying fees of $3 for the first page and $2 for each subsequent page of an official record must be based on the costs of providing the copies.

### 1. Framing the Issue

Plaintiff's insufficiency of the evidence argument presents the following issue. Does the evidence support a finding that County incurred $3 in costs to copy the first page of an official document and $2 in costs to copy each subsequent page?

For purposes of analyzing this issue, we assume that (1) County's time-based method of determining the costs of copying official records complied with applicable law and (2) the specific items of costs included in County's application of that method were direct and indirect costs under section 27366. Stated another way, plaintiff's claims of legal error are separated from our analysis of the sufficiency of the evidence.

15.

### 2. *Method for Calculating Costs of a Service*

We accept the implied finding that County's board of supervisors relied on the 2001 study when it adopted the new copying fees. The 2001 study used a time-based approach or method for calculating the costs of a particular service. Specifically, that method combined various costs of the clerk-recorder's office and then spread those costs across the amount of time staff spent doing their work. These steps yielded a cost per minute for staff time. Next, the cost per minute of staff time was multiplied by an estimate of the average number of minutes it took a staff member to complete a service. This multiplication yielded the study's estimate of the cost of a particular service.

The 2001 study determined that the costs of the clerk-recorder's office totaled $58.69 per hour of productive staff time and rounded this amount to $0.99 per minute. As to the time spent copying official records, the study estimated "staff spends an average of three minutes for duplication of official records." Multiplying three minutes by the per minute cost, the study concluded the costs were $2.97.

### 3. *Apportioning Costs to Pages Copied*

As described earlier, the study did not explain how the $2.97 in costs related to the *per page* recommendations. For instance, the study did not state whether the average of three minutes included only the time spent to obtain a copy of the first page or, alternatively, included the time spent copying all pages of the requested document. Furthermore, unlike the 1994 study, the 2001 study did not separately address the amount of time spent copying subsequent pages of official records. Consequently, there is no reasonable basis in the 2001 study for inferring that the "average of three minutes for duplication of official records" was limited to the time spent copying the first page. Therefore, the cost of $2.97 identified in the 2001 study appears to be an average cost of providing a copy of the entire official record and does not provide information about costs per page.

This interpretation of the three-minute average in the 2001 study as relating to the entire document is not contradicted by the study's attachments, the 2013 deposition of Lauwerys, or the declarations submitted by County. For instance, the assistant clerk-recorder's declaration stated, "I believe that three minutes is still a fair assessment of the typical amount of time that staff members spend with customers in providing copies of recorded documents." This statement supports the interpretation that the three-minute average is for the time spent providing a copy of the document, not just the first page. Similarly, the other documents in the record provide *no* evidence of the amount of time County staff spent in 2001 (1) obtaining a copy of only the first page of a document or (2) copying the second and subsequent pages of a document, either on a per page basis or for all pages after the first.

To illustrate this point, we consider the charges of (1) $5 for a two-page copy; (2) $15 for a seven-page copy; (3) $45 for a 22-page copy; and (4) $61 for a 30-page copy. If these fees are truly based on the amount of staff time spent providing the copies, one could calculate the amount of time staff would have to spend to justify the fee for a particular length document by dividing the fee charged by the cost figure of $0.99 per minute. Performing this calculation leads to the conclusion that staff would have to take five minutes to provide a copy of an official record with two pages in order to justify the $5 charged for the copy. Similarly, the fees charged would reflect the time-based approach to costs if it took 15 minutes to provide a copy of a seven-page document, 45 minutes for a 22-page document, and over one hour for a 30-page document.

However, the record contains *no evidence* that documents with these page lengths require that much staff time to copy and process. The absence of evidence about the amount of time spent copying the second and subsequent pages of a document renders it impossible to apply the time-based methodology set forth in the 2001 study to calculate the costs to County of providing copies of those pages. Therefore, we have eliminated

17.

the time-based methodology as a way to support the fees charged for copies of the second and subsequent pages of an official document.

Next, we next address whether the record contains evidence of an alternate method for calculating County's cost of providing copies of those pages. County's briefing does not argue an alternate method exists and plaintiff's reference to the fees of $0.15 per page charged by commercial copying services such as Kinko's was found inapplicable to the more complex services provided by the clerk-recorder's office.[8] Furthermore, our independent review of the record has not uncovered an alternate method. Therefore, we conclude there is no evidentiary support for an alternative to the time-based approach for calculating the costs to County of providing copies of the second and subsequent pages of an official record.

### 4. Conclusions: The Evidence Was Insufficient

We conclude that the record lacks evidence, substantial or otherwise, that the cost to County of providing copies of the second and subsequent pages of an official record is $2 per page. In other words, that portion of the fee schedule is "entirely without evidentiary support" for purposes of the abuse of discretion standard of review.

---

[8] The cost of copying documents has come before this court in a variety of legal contexts. In water management litigation, a copy company charged an average of 16.93 cents per page to provide 16 copies of the 17,766-page administrative record of proceedings. (*Friends of the Santa Clara River v. Castaic Lake Water Agency* (2004) 123 Cal.App.4th 1, 8, fn. 9.) In environmental litigation, this court upheld an award of costs for photocopying and binding the administrative record that equated to 17.92 cents per page. (*Wagner Farms, Inc. v. Modesto Irrigation Dist.* (2006) 145 Cal.App.4th 765, 777.) This figure was based on the amount charged by the copy company plus tax. (*Ibid.*) In an unfair competition case, this court affirmed an award of $30,495 in costs for photocopying business documents admitted into evidence as exhibits—an average cost per page of about 19 cents. (*El Dorado Meat Co. v. Yosemite Meat & Locker Service, Inc.* (2007) 150 Cal.App.4th 612, 618.) These copying costs might provide a relevant comparison to a county's cost *of duplication*, but do not include other aspects of the service provided by counties, such as organizing, storing, and pulling the official record requested by a customer.

(*Neighbors in Support of Appropriate Land Use v. County of Tuolumne*, *supra*, 157 Cal.App.4th at p. 1004.) Accordingly, County's board of supervisors abused its discretion when it approved a fee schedule that charged $2 per page for subsequent pages.

Furthermore, the record lacks evidence, substantial or otherwise, that the cost to County of providing a copy of the first page of a requested document was $3. Instead, the 2001 study demonstrates that (1) it cost County an average of approximately $3 to provide a copy of the entire document requested and (2) the average length of a requested document was about two and a half pages. Consequently, one cannot rationally conclude that it costs County as much to provide the first page alone as it costs to provide a copy of all pages of an average length document. Accordingly, County's board of supervisors abused its discretion when it approved the portion of the fee schedule that charged $3 for the first page of a requested document.

In short, there was an apples-versus-oranges type disconnect between the 2001 study's application of the time-based methodology to estimate *per document* costs and its recommendation to impose copying fees on a *per page* basis.

C. Prejudice

1. *Basic Principles*

When a party seeking a writ of traditional mandamus has established an abuse of discretion, the issuance of the writ is not automatic. That party also must show prejudice resulted from the public agency's action. (*Gordon v. Horsley* (2001) 86 Cal.App.4th 336, 351; art. VI, § 13 [miscarriage of justice required for reversal].)

2. *Showing of Prejudice*

Plaintiff's verified petition alleges it purchased a copy of a two-page document on October 23, 2013, and was charged $3 for the copy of the first page and $2 for the copy of the second page. A receipt attached to plaintiff's petition shows plaintiff paid County

19.

this $5 photocopy fee.  Plaintiff's attachments also show that in December 2013 it submitted a written claim for the overcharges and County rejected the claim in January 2014.

We conclude plaintiff has shown prejudice in the form of an overcharge for the copy of the two-page document.  The 2001 study constitutes evidence that it cost the clerk-recorder's office an average of approximately $3 to process a request for a copy of an official record and the average length of a requested document was two and a half pages.  Thus, the charge of $5 for a copy of a document of below average length exceeded the costs of providing that copy and the overcharge is sufficient to establish the requisite prejudice.

The question of the appropriate appellate relief for the prejudicial abuse of discretion shown by plaintiff is addressed in part III.E, *post*.

III.    DIRECT AND INDIRECT COSTS

Our review of the sufficiency of the evidence proceeded on the assumption that County applied the correct legal definition of costs when it adopted its fee schedule.  Our next step is to examine that assumption and plaintiff's contention that the trial court and the board of supervisors committed legal error by construing the phrase "direct and indirect costs" too broadly.  Plaintiff argues that County's erroneous interpretation allowed for the recoupment of more costs than authorized by section 27366.

A.      Sections 27360 and 27366

As background, we note that section 27360 states that "the county recorder shall charge and collect the fees fixed in this article."  The use of the word "shall" in the phrase "shall charge and collect" means it is mandatory for counties to charge the referenced fees.  (See § 14 ["shall" is mandatory].)  Section 27366 appears later in that article of the Government Code and addresses copying fees by stating:

"The fee for any copy of any other record or paper on file in the office of the recorder, when the copy is made by the recorder, shall be set by the

20.

board of supervisors in an amount necessary to recover the direct and indirect costs of providing the product or service ….”

Section 27366 has not been changed since the enactment of Assembly Bill No. 130 (1993-1994 Reg. Sess.), which replaced the fixed fees of one dollar for the first page and 50 cents for each additional page with a cost-based approach. (See Stats. 1993, ch. 710, § 3, pp. 4039-4040.)

The primary issue of statutory construction involves the phrase “direct and indirect costs.” Before addressing the meaning and application of this phrase, we address three other issues that establish part of the legal context or foundation for the interpretation of that phrase.

### B. Foundational Issues

#### 1. Constitutional Right of Access

First, we address the constitutional foundation for plaintiff’s view of how section 27366 should be interpreted. Plaintiff argues copying fees affect the people’s right of access and, therefore, the statutory provisions addressing such fees must be narrowly interpreted to lessen its restrictions on the right of access. We reject this argument, but conclude the constitutional provision will play a role in how our interpretation of section 27366 is applied to the facts of this case on remand.

In 2004, California voters approved Proposition 59—known as the “Sunshine Initiative”—and amended article I, section 3 by adding subdivision (b). (*POET, LLC v. State Air Resources Bd.* (2013) 218 Cal.App.4th 681, 750 (*POET*).) Subdivision (b)(1) of section 3 of article I currently reads:

“The people have the right of access to information concerning the conduct of the people’s business, and, therefore, the meetings of public bodies and the writings of public officials and agencies shall be open to public scrutiny.”

Subdivision (b)(2) of section 3 of article I currently states:

21.

"A statute, court rule, or other authority, … shall be broadly construed if it furthers the people's right of access, and narrowly construed if it limits the right of access. A statute, court rule, or other authority adopted after the effective date of this subdivision that limits the right of access shall be adopted with findings demonstrating the interest protected by the limitation and the need for protecting that interest."

Plaintiff contends this provision requires a narrow construction of the costs that may be recouped under section 27366. This contention implies that County's recovery of the costs of providing copies of official records "limits the right of access." (Art. I, § 3, subd. (b)(2).) This implication appears to be based on the idea that higher fees limit access and lower fees improve access. We recognize that the fees charged to a person requesting a copy of an official record are an important factor relating to access, but fees are not the exclusive factor relevant to access.

The evidence presented in this case shows that (1) "access" has a monetary component, an elapsed time component and a convenience component and (2) there are tensions or tradeoffs among these components. For instance, charging low fees might improve access by reducing financial barriers, but also could adversely affect the ease and speed of access. For instance, low fees could lead to a reduction in the number of hours the clerk-recorder's office takes requests for copies and an increase in the time that elapses between the submission of the request and the delivery of the copy to the customer. Therefore, reducing the fees charged ultimately could make obtaining copies a more time consuming, less convenient process for the customer. The tension between the different factors relevant to access lead us to conclude that the constitutional provision designed to further the people's right to access should be interpreted in a way that balances the different components and does not overemphasize cost.

In the present case, the evidence before the trial court supports an implied finding that the reduction of the copying fees would adversely affect the timeliness and convenience of access. The declaration of the assistant clerk-recorder explicitly addressed potential consequences of changing the fees charged for copies by stating:

22.

"The diminution in revenue without the current copy fees could result in negative outcomes: The wait times that an individual would experience in seeking assistance of the Clerk-Recorders' Office staff would be significantly increased and/or the daily hours of the Recorder's Office could be reduced for production of copies. I do not anticipate that the amount of work requested would diminish proportionately, rather, I would expect that it would simply take much longer for the public to obtain the same services that they now receive from the Clerk-Recorder's Office."

Plaintiff has not addressed this evidence, the implied finding it supports, or the multifaceted nature of access. The declaration constitutes substantial evidence supporting the trial court's implied finding. Therefore, we accept that finding and reject the view that higher copying fees only have the effect of limiting access to official records. As a result, we conclude that the phrase "direct and indirect costs" in section 27366 is not required to be as "narrowly construed" as is reasonably possible to comply with subdivision (b)(2) of section 3 of article I. Instead, the statute should be interpreted in a manner that recognizes costs are a significant, but not the only, factor that affects the public's access to documents. The interpretation adopted below bears this mind.

Furthermore, on remand when the trial court applies the statutory interpretation to the evidence presented to determine whether specific items qualify as indirect costs that can be factored into the cost calculation, the court should keep in mind the conflicting factors relevant to access and the constitutional goal of furthering access.

### 2. *Fees Exceeding Costs*

Next, we address a basic question about section 27366 and the leeway or discretion it might provide a board of supervisors. Does its phrase "an amount necessary to recover direct and indirect costs of providing the product or service" *prohibit* a board of supervisors from setting fees in excess of the costs of providing copies? This issue is not vigorously contested because County does not argue it may collect fees that exceed its costs. Nonetheless, we address this issue of statutory interpretation because it

23.

provides part of the foundation for analyzing the meaning of the phrase "direct and indirect costs," which is the primary source of controversy in this appeal.

Section 27366 does not appear to be ambiguous on the issue of fees that exceed costs, but we will assume for the sake of discussion that it is reasonably possible to interpret the phrase "an amount necessary to recover" as setting a minimum and not a ceiling. Under this assumption, the text can be reasonably interpreted as authorizing fees in "an amount necessary to recover *or exceed*" the costs of providing copies.

However, we reject the interpretation that section 27366 sets a minimum without establishing a maximum for the fees. Such an interpretation is contrary to the intent of the Legislature. A Senate floor analysis states the amendments proposed by Assembly Bill No. 130 "replace the current statutory fee limits, but permit supervisors to supersede them, so long as fees do not exceed the cost of the service provided." (Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 130 (1993-1994 Reg. Sess.) as amended Aug. 23, 1993, p. 1.) Based on this legislative history, we resolve any ambiguity in section 27366 by interpreting it to prohibit fees in excess of the direct and indirect cost of providing copies of official records.

### 3. Discretion to Set Fees

Another question about section 27366 is whether it grants a board of supervisors any discretionary authority when setting copying fees. The statute provides that copying fees "shall be set by the board of supervisors." (§ 27366.) The use of the mandatory term "shall" means that boards of supervisors have a mandatory obligation to set copying fees. However, the use of the word "shall" does not necessarily mean setting fees involves no discretion. (See *State Dept. of State Hospitals v. Superior Court* (2015) 61 Cal.4th 339, 348-349 [mandatory obligation to perform a function does not establish how the function should be performed where the function itself involves the exercise of

24.

discretion]; *Common Cause v. Board of Supervisors, supra,* 49 Cal.3d at p. 446 [mandamus will lie where governmental entity fails to exercise discretion].)

The statutory obligation to set copying fees requires a board of supervisors to determine "an amount necessary to recover" costs. This determination requires an exercise of judgment and is not simply a matter of performing a mathematical calculation that produces a single correct answer. (See *Thompson v. County of Alameda* (1980) 27 Cal.3d 741, 748-749 [ministerial act leaves no choice, but a discretionary obligation involves comparisons, evaluations, choices and judgments].) Consequently, we conclude section 27366 grants a board of supervisors some discretionary authority when setting copying fees. That discretion, however, is limited by the phrase "direct and indirect costs." (See *People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems*, *Inc.* (1999) 20 Cal.4th 1135, 1144 ["discretion is limited by the applicable legal principles"].)[9]

### C.    Direct and Indirect Costs

#### *1.    Ambiguity*

Our analysis of the meaning of the phrase "direct and indirect costs" begins with the usual threshold question of whether these words are ambiguous—that is, reasonably susceptible to more than one interpretation. (*Kirby v. County of Fresno* (2015) 242 Cal.App.4th 940, 967; *Coburn v. Sievert* (2005) 133 Cal.App.4th 1483, 1494-1496.)

We conclude the term "direct costs" is not ambiguous. Both parties appear to accept the definition of "direct costs" adopted in *North County Parents Organization v. Department of Education* (1994) 23 Cal.App.4th 144. That case addressed the meaning

---

[9]    Plaintiff contends the trial court erred in finding that County had unlimited discretion to set the fees. The trial court did not explicitly state County had *unlimited* discretion, but did state "[t]he case turns on the definition of 'indirect costs' in § 27366." Under the principles of appellate review that guide our interpretation of trial court orders, we conclude the trial court correctly decided the statutory phrase "indirect costs" limited County's discretion in setting the amount of the fees.

the phrase "direct costs of duplication" used in section 6257. (*North County Parents Organization, supra,* at pp. 147-148.) The court concluded the "direct cost of duplication is the cost of running the copy machine, and conceivably also the expense of the person operating it." (*Id*. at p. 148.) The limiting prepositional phrase "of duplication" caused the court to conclude the direct cost of ancillary tasks, such as document retrieval, inspection and handling were excluded. (*Ibid*.) In contrast, the limiting prepositional phrase in section 27366 is "of providing the product or service," which encompasses more than the cost of duplication. Therefore, we conclude that the direct costs of providing copies of official records is the cost of operating the equipment used to satisfy the request and the cost of the employee time taken to provide the service, and the cost of the paper and toner used to make the copies.

In contrast, we conclude the term "indirect costs" is ambiguous because it does not have a single, plain meaning. Among other things, the variety of dictionary definitions of "indirect costs" presented by County establish that there is no single definition that can be classified as the ordinary, usual meaning.

### 2. Role of Common Law

Plaintiff addresses the ambiguity in the term "indirect costs" by arguing it must be interpreted consistent with the common law. Specifically, plaintiff argues that (1) the common law imposes mandatory limits on the costs that ordinary user fees may recoup and (2) copying fees are *ordinary* user fees, not *regulatory* user fees. Plaintiff contends that ordinary user fees are charged only to those who use the goods or services and the amount charged may recoup only those costs reasonably related to the actual goods or services provided.

We conclude the cases discussing the common law limits on ordinary user fees are not authority for the meaning of the term "indirect costs" used in section 27366. The legislative history referenced in plaintiff's appellate brief does not show the Legislature

intended common law principles would define the scope of the term "indirect costs." Therefore, we conclude the ambiguity in the term "indirect costs" used by section 27366 is not resolved by using common law principles relating to ordinary user fees.

### 3. Unfair Practices Act: Reasonably-Related-To Test

California's Unfair Practices Act (Bus. & Prof. Code, § 17000 et seq.) prohibits a business from selling "any article or product at less than the cost thereof" for the purpose of injuring competitors or destroying competition. (Bus. & Prof. Code, § 17043.) The Unfair Practice Act also defines "cost," "cost of doing business" and "overhead expense." (Bus. & Prof. Code, §§ 17026, 17027, 17029.)

In *Turnbull & Turnbull v. ARA Transportation, Inc.* (1990) 219 Cal.App.3d 811 (*Turnbull*), the court addressed the appropriate cost standard for determining whether a sale violated the Unfair Practices Act by being below cost. (*Turnbull, supra,* at pp. 819-820.) The court stated the statute defined cost to include all variable and fixed costs and, consequently, employed a fully allocated cost or fully distributed cost standard. (*Id*. at p. 820.) Plaintiff cites this case for the principle that "there are many ways of fully allocating costs, [but] the possibilities are not without limitation. To be legally acceptable, the allocation of indirect or fixed overhead costs to a particular product or service must be reasonably related to the burden such product or service imposes on the overall cost of doing business." (*Id*. at p. 822.)

County's brief does not address *Turnbull* or the approach to costs used under the Unfair Practices Act. Moreover, the approach County takes to indirect costs does not impliedly contradict the "reasonably related to" principle from *Turnbull*. Indeed, County quotes a Judicial Council document that states the full cost recovery of services includes "an appropriate share of indirect costs that can be attributed reasonably to the activity or service provided."

Based on plaintiff's reliance on *Turnbull* and the definitions of indirect costs presented by County, we conclude that the ambiguity in the term "indirect costs" is resolved by a general test that requires such costs to be reasonably attributed to (i.e., reasonably related to) providing copies and excludes costs that cannot be reasonably attributed to the service of providing copies. The application of this test presents a question of fact, which must be decided by a county's board of supervisors when it sets the fee for copying official documents.

### 4. Role of Section 54985

Neither party contends section 54985 is the statute that controls the copying fees County must charge. Similarly, the trial court explicitly concluded that section "54985 does not apply." We conclude section 27366 applies to the copying fees and, therefore, we join the parties and the trial court in concluding section 54985 has no direct application in this case. Nonetheless, section 54985 is part of the overall statutory scheme governing cost recoupment by county and, therefore, it must be considered when interpreting section 27366. (*POET*, *supra*, 218 Cal.App.4th at p. 749 [ambiguous statutory provision must be construed in context and with reference to the entire statutory scheme].) In other words, section 27366 must be construed in a manner that avoids disharmony with section 54985.

Section 54985 is set forth in the chapter of the Government Code addressing county fees and it provides in relevant part:

> "(a) Notwithstanding any other provision of law that prescribes an amount or otherwise limits the amount of a fee or charge that may be levied by a county, … a county board of supervisors shall have the authority to increase or decrease the fee or charge, that is otherwise authorized to be levied by another provision of law, in the amount reasonably necessary to recover the cost of providing any product or service or the cost of enforcing any regulation for which the fee or charge is levied. The fee or charge may reflect the average cost of providing any product or service …. *Indirect costs* that may be reflected in the cost of providing any product or service

28.

*… shall be limited to those items that are included in the federal Office of Management and Budget Circular A-87 on January 1, 1984.* [¶] … [¶]

"(c) This chapter shall not apply to any of the following: [¶] … [¶]

"(6) Any fee charged or collected by a county recorder or local registrar for filing, recording, or indexing any document, performing any service, issuing any certificate, or providing a copy of any document pursuant to Section … 27366 of the Government Code .…" (Italics added.)

Plaintiff contends the board of supervisors erred by relying on section 54985 to adopt an expansive definition of "indirect costs." Plaintiff argues the Legislature chose to address copying fees in a separate statute and this legislative decision demonstrates an intent for section 27366 to take a narrower approach to indirect costs than that taken in section 54985. In contrast, County draws the opposite inference about the legislative intent underlying the decision to address copying fees in a separate statute, arguing that it is reasonable to infer that the costs included in the definition by federal Office of Management and Budget Circular A-87 are included in the definition of "indirect costs" under section 27366, but counties *are not limited to* recouping the costs covered by Circular A-87. Consequently, County argues that section 54985 and its reference to Circular A-87 is helpful in defining a minimum for the indirect costs recoverable under section 27366.

The record before this court does not contain a copy of the 1984 version of Circular A-87. The record does contain a copy of the version of Circular A-87 as revised by a May 20, 2004, notice. (70 Fed.Reg. 51910 (Aug. 31, 2005) [relocating Circular A-87 to 2 C.F.R. Part 225]; see 60 Fed.Reg. 26484 (May 17, 1995) [adoption of revisions to Circular A-87].)[10]

Based on the sparse record before this court, we are reluctant to establish any hard and fast rules about the role of section 54985 and, more particularly, Circular A-87 in

---

**10**     It appears that "45 CFR part 75 superseded OMB Circular A-87." (80 Fed.Reg. 48200, 48221 (Aug. 11, 2015).)

defining the meaning of "indirect costs" for purposes of section 27366. For example, it would be imprudent to find, as a matter of law, that the various categories of indirect costs identified in a particular version of Circular A-87 *always* constitute costs that are reasonably attributed to (i.e., related to) to a county's providing copies of official records and, therefore, satisfy the "reasonably attributed to" test approved in part III.C.3, *ante*. Instead, we conclude that versions of Circular A-87 might provide useful guidance, but cannot provide definitive answers under the reasonably-attributed-to test that defines "indirect costs" for purposes of section 27366 because that test presents a question of fact dependent upon the surrounding circumstances.

### 5. *Summary*

We conclude the term "direct costs" is unambiguous, but the term "indirect costs" is reasonably susceptible to more than one interpretation. We further conclude that the ambiguity in the term "indirect costs" is resolved by requiring such costs be reasonably attributed to (i.e., reasonably related to) the service of providing copies and by excluding costs not reasonably attributed to the service of providing copies. The application of this test is dependent upon the board of supervisors making legislative findings of fact under the reasonably-attributed-to standard.

### D. Specific Applications of Test

### 1. *Cost-of-Service Methodology*

Plaintiff's appellate briefing suggests the time-based method of calculating costs used in the 1994 and 2001 studies was inappropriate. Because this case requires further proceedings, we briefly address this suggestion to provide guidance on remand.

The choice of methodology for calculating a county's cost of providing copying services is a matter committed to the discretion of the board of supervisors because there is no single legally correct methodology. Examples of different methodologies include the cost of service approach used for setting rates of public utilities, which includes a

30.

reasonable rate of return on the "rate base"—that is the value of the property devoted to public use. (*City and County of San Francisco v. Public Utilities Com.* (1971) 6 Cal.3d 119, 122.) Also, antitrust and unfair competition law present different approaches to calculating the cost of providing a good or service. (*Turnbull*, *supra*, 219 Cal.App.3d at p. 820 [fully allocated cost equated with average total cost, which included both fixed and variable costs attributable to each unit of output].) Therefore, we conclude a board of supervisors' choice of method for determining direct costs and allocating indirect costs is subject to review under the abuse of discretion standard. Consequently, the choice must not be arbitrary, capricious or entirely without evidentiary support. (*Neighbors in Support of Appropriate Land Use v. County of Tuolumne*, *supra*, 157 Cal.App.4th at p. 1004.)

Based on the record before us, we are not able to decide whether the use on remand of the time-based method of allocating costs would constitute an abuse of discretion. For instance, we cannot predict whether the evidence before the board of supervisors when it makes its decision will be sufficient to support using the time-based method. Consequently, if the time-based method is used on remand, we cannot decide whether the use of the concept of productive staff time will be supported by sufficient evidence.

### 2. *Items or Categories Plugged into Method*

Once the method for calculating County's cost of providing copying services has passed scrutiny under the abuse of discretion standard, the specific categories and items of cost that are plugged into the method must satisfy the tests for direct and indirect costs. For example, if the cost of staff overtime is included as an indirect cost, there must be evidence in the record to support a finding that overtime can be reasonably attributed to (i.e., reasonably related to) providing the service of copies of official records.

31.

E.    Appellate Relief and the Contents of the Writ of Mandate

The appellate briefing has devoted little space to addressing the specific instructions that should be included in the writ of mandate issued to County's board of supervisors.

### 1.    *Need for Interim Fee Schedule*

The first question we address is whether the current fee schedule should be invalidated and replaced with another schedule while the board of supervisors considers resetting the copying fees.

We conclude there is no need for an interim fee schedule under the facts of this case. First, any overcharges to plaintiff that occurred during the period within the statute of limitations can be remedied by an award of damages that acts as a refund of the amount overcharged. In other words, there is a legal remedy available and, therefore, it is not necessary for the writ of mandate to attempt to remedy past or continuing overcharges, if any. Second, the record before this court lacks sufficient information for us to adopt a fee schedule that complies with section 27366 and sets those fees in an amount necessary to recover direct and indirect costs of providing copies in 2016.

### 2.    *Directions for Resetting the Copying Fees*

The second question concerning the contents of the writ of mandate relates to the level of detail in our instructions about the direct and indirect costs that must be recovered through the charging of fees. The prayer in plaintiff's petition for writ of mandate requested a writ directing County "to demand and collect fees for copies of records on file in the office of the County Recorder that are limited to the recoupment of, only, the costs of paper, ink and toner to print and copy the documents; the photocopier used to make the copy and the cost of its operation and maintenance; the salary and benefits of the person making the copy; and the costs necessarily associated with the retrieval, inspection, redaction and handling of the document being copied."

County has not addressed the directions the writ of mandate should give for the resetting of the copying fees. However, County's arguments about the appropriate definition of direct and indirect costs suggest it would not object to a writ stating that (1) recoverable *direct costs* include the amounts paid for (a) the paper, ink and toner used to make the copy, (b) the photocopier, including its operation and maintenance, and (c) the salary and benefits of the person making the copy; and (2) recoverable *indirect costs* are the overhead cost of operating the clerk-recorder's office and are not tied to any one particular customer or copy and include (a) salary and benefits of all staff necessary for operating the clerk-recorder's office, (b) lease payments for the building and equipment, (c) costs of utilities, services contracts, computers, equipment, and furniture; (d) maintenance and depreciation of office equipment; (e) office cleaning; and (f) insurance, office supplies and necessary travel expenses.

Based on the factual nature of reasonably-attributed-to standard (see pt. III.C.3, *ante*) for determining the indirect costs of providing copies of official records, we conclude that the writ of mandate should direct the board of supervisors to apply this standard in determining the indirect costs that must be recovered in the fees charged.

IV.    SPECIAL TAXES AND THE CLAIM OF TRIAL COURT ERROR*

Plaintiff's claim that the trial court committed constitutional error need not be discussed in detail because this matter is being remanded with directions for the board of supervisors for further proceedings on the statutory claim.

Article XIII C states that local governments may not impose a "special tax" without the electorate approving that tax by a two-thirds majority vote. (Art. XIII C, § 2, subd. (d).) It also defines the term "tax" to include charges that "exceed the reasonable costs to the local government of providing the service or product." (Art. XIII C, § 1, subd. (e)(2).)

---

\*    See footnote, *ante*, page 1.

33.

We conclude that copying fees limited to the recovery of direct and indirect costs in accordance with section 27366 will not "exceed the reasonable costs to the local government of providing the [copies]" for purposes of article XIII C, section 1, subdivision (e)(2). Conversely, copying fees that fail to satisfy the statutory requirement cannot be regarded as reasonable for purposes of article XIII C.

Based on our conclusions about the relationship between the constitutional and statutory provisions, we further conclude that (1) plaintiff's constitutional cause of action overlaps with its claim under section 27366; (2) the reversal and reinstatement of the statutory claim results in the constitutional claim also being "at large" after remand; and (3) the writ of mandate need not provide the board of supervisors with separate instructions for how to comply with article XIII C because of the overlap between the statutory and the constitutional claim.

## DISPOSITION

County of Stanislaus's request for judicial notice, filed August 26, 2015, is granted as to Exhibits A and B (controller's manual and handbook) and denied as to Exhibits C through E (judgments from other superior court proceedings).

County of Stanislaus's request for judicial notice, filed September 17, 2015, relating to the legislative history for section 54985 of the Government Code is granted.

The judgment is reversed and the matter remanded for further proceedings. The superior court is directed to vacate its August 21, 2014, ruling on the petition for writ of mandate and enter a new order that grants the petition for writ of mandate.

The superior court shall issue a peremptory writ of mandate compelling County's board of supervisors to (1) consider the matter of fees charged by the clerk-recorder's office for copying official records; (2) make findings under section 27366, supported by substantial evidence, as to the fee amount necessary to recover the direct and indirect costs of providing the copies; (3) determine what constitutes an "indirect cost" by using the general test that requires such costs to be reasonably attributed to (i.e., reasonably

34.

related to) the service of providing copies and rejects costs not reasonably attributed to the service of providing copies; and (4) set the copying fees charged by the clerk-recorder's office in accordance with its findings under section 27366.

The superior court shall retain jurisdiction over the proceedings by way of a return to the writ, which jurisdiction shall include the authority to hear and decide plaintiff's claim for damages in the event that the new fee schedule sets amounts less than the schedule currently in effect.

Plaintiff shall recover its costs on appeal.


                                _____

                                          FRANSON, J.

WE CONCUR:


_____
KANE, Acting P.J.


_____
PEÑA, J.